**Garfield WELLS, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13433.**

District of Columbia Court of Appeals.

Argued May 17, 1979.

Decided Nov. 5, 1979.

16. D.C.Code 1973, § 29–938.

William I. Martin, Washington, D. C., appointed by this court, for appellant.

Richard W. Goldman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry and Michael W. Farrell, Asst. U. S. Attys. Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and GALLAGHER, Associate Judges.

NEWMAN, Chief Judge:

A jury convicted appellant on three counts of felony-murder and other related offenses arising from an act of arson that killed three people and injured several others. He contends on this appeal that the trial court erred in failing to conduct a pretrial hearing on appellant's claim that the police coerced a statement from him by physical abuse and threats. We agree and remand.[1]

I

On the evening of May 14, 1977, appellant quarrelled with a woman with whom he had been involved romantically. At about midnight of the same night, someone splashed gasoline on and around the front door of her apartment and ignited it. The woman escaped harm, but, as a result of the fire and subsequent explosion, several people were killed. Shortly after her escape, the woman told police of her quarrel with appellant. The officers went to appellant's home where his mother admitted them and directed them to his bedroom. The officers found him there, asleep. The room smelled of gasoline, and appellant's shoes and clothing were wet with it. The officers arrested him and took him to the station house.

At the station the officers warned appellant of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and appellant signed a card acknowledging that fact. After being questioned appellant made a statement which the police transcribed and appellant signed. In his statement appellant said that he had met the woman that evening and she had driven him home. After a while, he continued, he went over to her apartment.

When I arrived at her apartment there was a dude who was sitting on the steps, there was a round can sitting outside [her] door, it was sitting in front of the steps, there was a liquid on the floor, the dude said, "Hey, baby, what's happening." I had a note I was going to put it under the door, then I decided to put it in the mailbox, then the dude said, "I don't think she's home, Brother." I said, "Solid," I walked outside, tore up the note, and went home. . . .

Later in his statement, in response to police questions, appellant said he had not purchased any gasoline that evening, that he had drunk a cup of wine, that he had not used any drugs, and that he had not been mistreated in any way by the police.

Prior to trial appellant moved to suppress his statement on the ground that the police had violated his rights under *Miranda v. Arizona, supra.* At a hearing on this mo-

---

1. Appellant also contends (1) that he was denied the effective assistance of counsel when the trial court denied summarily his motion to change counsel, (2) that the trial court erred in refusing to suppress evidence taken in the search of his bedroom, (3) that the convictions of both arson and felony-murder subjects him to double jeopardy, (4) that the Fifth Amendment prevents the trial judge from imposing consecutive sentences for multiple counts of felony murder arising out of a single act, (5) that the evidence on the assault counts was insufficient upon which to base a conviction, and (6) that the trial court erred in instructing the jury on transferred intent. We have examined each of these contentions, and we find that they are without merit.

tion held pretrial, appellant took the witness stand, and, in the course of his testimony he stated several times that he had suffered threats and physical abuse at the hands of the police. The following exchange is illustrative:

Q. So then what happened?

A. Like I said, he continued to give me the advice.

Q. How did you—what other advice?

A. You know, physical advice, you know. I can't prove it, you know. Other than I had to go to the hospital twice that night.

Q. What kind of physical advice did they give you?

A. You mean how did they give it to me? With their hands.

\* \* \* \* \* \*

Q. Tell the Court what he did.

A. All they did was smack me a little bit, hit you in your rib cage, and that—them kinds of jobs.

The court denied appellant's motion to suppress his statement on *Miranda* grounds. In ruling, the court made the following references to the alleged abuse:

Now, the question is whether Mr. Wells understood his rights. He answered I guess I do, I guess so. Now, the only thing that disturbs the Court about the whole question of Mr. Wells and his statement is the fact that Mr. Wells testified that he was perhaps beaten, and the Court is going to make a note and make an investigation of that part separate from the case. Mr. Wells' testimony will be transcribed, that part will be gone into. However, *Michigan against Mosley* states that if a defendant says he wishes to have an attorney present that no further questioning can be had of that defendant. We don't have that in this case. Mr. Wells said yes and no. May I have the [waiver of rights] card please. Mr. Wells—based on this testimony that he was pounded, the Court itself is confused because assuming that he was answering the card in between pounding he would put no and then yes as a result of the pounding, but he did just the opposite, he put yes and then no. Thus, *Michigan against Mosley* does not cover this because there's no definitive answer here.

Following the court's ruling, appellant asked to address the bench personally, and thereupon the following exchange occurred:

THE DEFENDANT: Your Honor, some of the proceedings some of it I understand, some of it I don't. The point about—I think I said I didn't really want to bring it up about what happened.

THE COURT: Sir?

THE DEFENDANT: I think I did bring out—up the point—I didn't want to say what really happened because I know it is hard—very seldom someone is going to believe you when you say the police did something to you. I know nobody was up there but me and them, the three of them, and I don't know if it is any blood out there was people down in the cellblock they knew. They had to take me in and out of there a couple of times because I was spitting up blood, I was bruised. Had to go to the hospital twice that night. Now, you know, like I said I didn't want to bring—you know it is very hard to prove, and a lot of times when you say something like that it is usually people put it to the point that this person is trying to look for a way out, but as far as I know and the way I feel within myself, I know I didn't lie about anything. It did happen. There is no question about that. By proving it is in the horse of another color. I know it can't be proved. They are going to cover it up without a doubt.

THE COURT: Sir, on that particular phase, I believe I put on the record that after this trial is over the Court will go into that particular phase of your having been beaten or pounded, as you call—you said pounded—or I believe you said, using your words.

THE DEFENDANT: I said pounded, in other words, being hit.

THE COURT: You said something else. You said pounded and advice, I believe giving you advice.

THE DEFENDANT: Sound advice is the way they put it, sound advice.

THE COURT: So the Court will make an investigation of that part of your testimony and we'll see what happens on that. We'll make an investigation after the case is all over. All right, sir.

THE DEFENDANT: All right.

The jury trial began on the same day. The government introduced appellant's entire statement to the police as a part of its case-in-chief. The officer who took appellant's statement, and who read the statement to the jury, was cross-examined at some length about the surrounding circumstances, but no specific questions addressed appellant's accusation that the police used threats and physical abuse to extract the statement from him. Appellant did not testify at trial and offered no evidence pertaining either to the circumstances surrounding the making of his statement or to his allegation of physical abuse. At the conclusion of trial, the court instructed the jury concerning the use it could make of appellant's pretrial statement.[2] The jury found appellant guilty as charged on February 6, 1978.

## II

■ Courts long have held that coerced confessions have no place in criminal prosecutions and, therefore, are inadmissible as evidence of guilt. *E. g., Miranda v. Arizona, supra; Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). *See generally* C. McCormick, Evidence §§ 147–50 (2d ed. 1972); 3 J. Wigmore, Evidence §§ 821–26 (Chadbourn rev. 1970). This constitutional tenet is so strong that a conviction, founded in part upon the evidence of an involuntary confession, must be set aside even if the evidence apart from the confession was more than sufficient to uphold a jury's verdict of guilt. *See, e. g., Malinski v. New York,* 324 U.S. 401, 404, 65 S.Ct. 781, 89 L.Ed. 1029 (1945). Although the common law justified the exclusion of coerced confessions on the ground that they were "testimonially untrustworthy," 3 Wigmore, *supra* § 822, the decisions under the Constitution have eschewed strict reliance upon this rationale in favor of the due process guaranty. *See* Ritz, *Twenty-five Years of State Criminal Confession of Cases in the U.S. Supreme Court,* 19 Wash. & Lee L.Rev. 35, 43–51 (1962). Thus the Supreme Court has held that an involuntary confession is inadmissible without regard to its truth or falsity. *Rogers v. Richmond,* 365 U.S. 534, 540–41, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The Court has employed two separate approaches to prevent the admission of poten-

---

**2.** The instruction given was as follows:

Evidence has been introduced that the defendant made a statement concerning the crime charged. You should weigh such evidence with caution and should carefully scrutinize all the circumstances surrounding the alleged statement to determine whether it was made freely and voluntarily. If you find that the alleged statement was made by the defendant freely and voluntarily with an understanding of the nature of the statement, without fear, threats, coercion, or force, either physical or psychological, and without promise of reward, you may consider the statement together with all the other evidence in determining the guilt or innocence of the defendant. However, if you find that the alleged statement was not made freely and voluntarily by the defendant, you must disregard it entirely.

In considering whether the alleged statement was free and voluntary or not, you may consider the conversations, if any, between the police and the defendant, including whether the defendant was warned of his rights; the time and the place that the alleged statements occurred; the length of time, if any; the physical and mental condition of the defendant; and all other circumstances surrounding the alleged statement; including age, disposition, education, experience, character, and intelligence of the defendant.

A statement is not involuntary solely because elicited by questions or made while the defendant was under arrest or made in the absence of counsel or made without warning or caution that he had the right to remain silent and that his statement would be used against him. However, you may consider such in determining whether the statement was made freely and voluntarily. The burden is on the Government to prove beyond a reasonable doubt that the alleged statement was voluntarily made.

tially coerced confessions at trial. One of these, now embodied in the Court's decision in *Jackson v. Denno,* is the requirement that, once an allegation that defendant's confession was involuntary has arisen, the trial court shall not receive the confession into evidence without first finding the confession has been made voluntarily. Thus, current constitutional doctrine directs that "a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given." *Sims v. Georgia,* 385 U.S. 538, 543–44, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967). The second approach emerged from the Court's recognition that forms of coercion more subtle than the traditional "third degree" could render a defendant's confession constitutionally involuntary. *Miranda v. Arizona, supra,* 384 U.S. at 445–58, 86 S.Ct. 1602. Inasmuch as these more subtle forms of coercion were not likely to be demonstrable to a trial court making a determination on the voluntariness issue, the Supreme Court established a set of rules to govern the in-custody interrogation of suspects by the police. *See id.* at 467–79, 86 S.Ct. 1602. Adherence to the rules constitutes the best bulwark assuring preservation of the individual's constitutional rights and similarly, reducing the possibility that those subtle forms of coercion render involuntary a statement made by the individual. *Miranda v. Arizona, supra. See generally* Warden, *Miranda—Some History, Some Observations, and Some Questions,* 20 Vand.L.Rev. 39, 47 (1966).

The Court's approach employed in *Miranda v. Arizona* does not supplant entirely the approach employed in *Jackson v. Denno.* Although the immediate impact of the rules announced in *Miranda* falls upon the police, the courts nevertheless make the final determination of whether adherence to the rules was sufficient to warrant admitting the confession or statement into evidence. *See Miranda v. Arizona, supra* at 479, 86 S.Ct. 1602. Additionally, the courts deal with the allegations of more traditional forms of coercion—oppressive conditions, threats, and physical violence—directly through the *Jackson v. Denno* procedures

rather than through a perceived violation of the *Miranda* rules.

### A.

Prior to the Supreme Court's decision in *Jackson v. Denno,* the states and federal circuit courts employed one of three procedures for determining whether a confession had been made voluntarily. *See generally Jackson v. Denno, supra,* 378 U.S. at 410–23, 84 S.Ct. 1774 (appendices to Mr. Justice Black's opinion), *and* 18 Vand.L.Rev. 237, 237–40 & nn.18, 20 & 21 (1964) (the sources differ slightly as to which states followed each procedure). Under the New York procedure, the trial court excluded the confession if it found it involuntary as a matter of law. If, however, the trial court was of the opinion that a fair question of voluntariness existed, the court admitted the confession into evidence and left the determination of voluntariness to the jury. 18 Vand.L.Rev. at 237 n.1. The orthodox or Wigmore procedure committed the determination of voluntariness solely to the trial judge. *Id.* at 240. In the Massachusetts or "humane" procedure, apparently a compromise between the New York and orthodox rules, the trial court determined the voluntariness of the confession, after which, if he found it to be voluntary, the jury made an independent determination on that issue. *Id.* After the ultimate determination of voluntariness whether made by the trial court or the jury, the jury was permitted to consider the confession as it would any other item of evidence and, accordingly, to assign it such weight as it chose to give. *See Sims v. Georgia, supra,* 385 U.S. at 544, 87 S.Ct. 639.

Prior to *Jackson v. Denno,* the courts of this jurisdiction, "by law and practice," followed a procedure similar to the New York procedure:

[T]he court first holds a preliminary hearing for the purpose of determining whether there is evidence from which the jury could properly conclude that the confession was voluntary If the court concludes there is no such evidence, it must exclude the confession; but if it finds there is evidence on the basis of which it

might be held to be voluntary, then the question of voluntariness is submitted to the jury. [*Wright v. United States,* 102 U.S.App.D.C. 36, 45, 250 F.2d 4, 13 (1957) (en banc).]

The crucial difference between, on the one hand, the New York procedure followed in this jurisdiction, and, on the other hand, the orthodox and Massachusetts procedures, was that the former called upon the trial court to determine whether the jury could find that the confession was voluntary while the latter required the trial court to make its own determination if the confession was voluntary before letting the jury hear the evidence.

In *Jackson v. Denno,* the Supreme Court weighed the constitutionality of the New York procedure and found it wanting. Reiterating that the voluntariness of a confession has nothing to do with its reliability, the *Jackson* Court noted that the New York procedure permitted the jury to consider the confession's reliability in determining voluntariness, thereby depriving the defendant of a trustworthy determination of voluntariness. Further, once the confession had been offered to the jury for their resolution of the voluntariness issue, it would continue to influence their determination of the defendant's innocence or guilt even if they found it involuntary and, therefore, excludible. As the Court stated:

It is difficult, if not impossible, to prove that a confession which a jury has found to be involuntary has nevertheless influenced the verdict or that its finding of voluntariness, if this is the course it took, was affected by the other evidence showing the confession was true. But the New York procedure poses substantial threats to a defendant's constitutional rights to have an involuntary confession entirely disregarded and to have the coercion issue fairly and reliably determined. [*Jackson v. Denno, supra,* 378 U.S. at 389, 84 S.Ct. at 1787.]

In so holding, the Court eschewed the view of *Stein v. New York,* 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), that the *sole* constitutional ground for the exclusion of

coerced confessions was their inherent lack of trustworthiness. *See Jackson v. Denno, supra,* 378 U.S. at 383–86, 84 S.Ct. 1774. Although the Court overruled *Stein* in *Jackson, id.* at 391, 84 S.Ct. 1774, it did not abandon altogether this common law rationale for excluding coerced confessions but rather retained it as one of the reasons behind the decision. The Court explicated the foundations of its decision as follows:

It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary confessions not only because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the "strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will," *Blackburn v. Alabama,* 361 U.S. 199, 206–07, 80 S.Ct. 274, 4 L.Ed.2d 242 [1960], and because of "the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves." *Spano v. New York,* 360 U.S. 315, 320–21, 79 S.Ct. 1202, 3 L.Ed.2d 1265 [1959]. [*Jackson v. Denno, supra* at 385–86, 84 S.Ct. at 1785.]

Additionally, a confession is so prejudicial a piece of evidence that an independent determination of voluntariness is required to ensure both that the jury hears only confessions that were freely and voluntarily given and that the jury disregards entirely any improper confession. *Id.* at 389, 84 S.Ct. 1774.

On the same day that it issued its decision in *Jackson v. Denno,* the Supreme Court, by memorandum decision, vacated and remanded *for further proceedings consistent with Jackson* two decisions of the United States Court of Appeals for the District of Columbia Circuit. *Pea [I] v. United States,* 378 U.S. 571, 84 S.Ct. 1929, 12 L.Ed.2d 1040 (1964), *vacating and remanding,* 116 U.S. App.D.C. 410, 324 F.2d 442 (1963) (per cu-

riam); *Muschette v. United States,* 378 U.S. 569, 84 S.Ct. 1927, 12 L.Ed.2d 1039 (1964), *vacating and remanding,* 116 U.S.App.D.C. 239, 322 F.2d 989 (1963) (per curiam). In both of these cases the circuit court affirmed convictions wherein the trial court following the procedure of *Wright v. United States, supra,* had admitted a possibly coerced confession into evidence without having made an independent determination of voluntariness.

### B.

In the wake of *Jackson* and its progeny, the procedures used in this and other jurisdictions for dealing with allegedly coerced confessions perforce experienced change. Although the *Jackson* decision left as an open question whether the prior determination of voluntariness, made out of the jury's hearing, would be made by the trial court or another jury, *Jackson v. Denno, supra,* 378 U.S. at 391 n.19, 84 S.Ct. 1774, this jurisdiction committed that determination to the trial court, *Hutcherson v. United States,* 122 U.S.App.D.C. 51, 351 F.2d 748 (1965), as did most other courts. *See* Annot., 1 A.L.R.3d 1251, § 2 (1965 & Supp. 1978). The court in *Hutcherson* set forth as follows the procedures to be employed:

> [T]he trial court must decide initially the question of admissibility, resolving the issue of voluntariness one way or the other. If the court finds involuntariness, the court must exclude the confession; it never goes to the jury for any purpose. If the court concludes that the confession is voluntary it is admitted into evidence. [*Id.* at 57, 351 F.2d at 754.]

In expanding upon the trial court's role, the *Hutcherson* court noted that *Jackson v. Denno* mandated "a reliable and clear-cut determination" of the voluntariness question, 378 U.S. at 391, 84 S.Ct. 1774, and it suggested that, although the Supreme Court had stated that the trial court's conclusions and findings should be "express or ascertainable from the record," 378 U.S. at

378 n.8, 84 S.Ct. at 1781 n.8, "[t]he better practice argues in favor of express findings." *Hutcherson v. United States, supra,* 122 U.S.App.D.C. at 58, 351 F.2d at 755. Thereafter the Supreme Court restated the "constitutional rule laid down in" *Jackson v. Denno* as follows:

> [A] jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given. The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant but it is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. [*Sims v. Georgia, supra,* 385 U.S. at 543–44, 87 S.Ct. at 643.]

The *Hutcherson* decision also illuminated the jury's role in considering the allegedly coerced confession. The court stated that, although the trial court had ruled a confession to be voluntary, "the jury is not bound by this ruling of the court on voluntariness. Under appropriate instructions it may decide that the confession was involuntary, in which event the jury must disregard it." *Hutcherson v. United States, supra,* 122 U.S.App.D.C. at 57, 351 F.2d at 754. The defects that had proven fatal to the New York procedure considered in *Jackson v. Denno*—that the jury can consider the trustworthiness of the confession while deciding the voluntariness issue, and that, if they found the confession involuntary, the jury might not be able to disregard it entirely—did not jeopardize the constitutional propriety of this procedure, the *Hutcherson* court opined, because the trial court would have held the confession to be voluntary already.[3] *Id.* at 58, 351 F.2d at 755. *See Jackson v. Denno, supra,* 378 U.S. at 378 n.8, 84 S.Ct. 1774.

---

3. We pause at this juncture to note that the language of both *Hutcherson* and *Sims v. Georgia* permits, but does not require, a second determination of the voluntariness issue, focussed on the legal admissibility of the confession, by the jury.

Subsequently the Supreme Court announced a further modification of the trial court's role. After the *Jackson v. Denno* decision, state and federal circuit courts had split on the question whether the trial court was required to find that a challenged confession was voluntary "beyond a reasonable doubt" or by some lesser standard. *See Lego v. Twomey,* 404 U.S. 477, 479 n.1, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The United States Court of Appeals for the District of Columbia had held, as a matter of supervisory power, the voluntariness must be proven by the former, more rigorous standard. *Pea [II] v. United States,* 130 U.S. App.D.C. 66, 397 F.2d 627 (1967), *aff'd en banc,* 130 U.S.App.D.C. 76, 397 F.2d 637 (1968). In *Lego v. Twomey,* the Court held that the Constitution entitled the defendant to a "reliable and clear-cut determination that the confession was in fact voluntarily rendered . . . at least by a preponderance of the evidence." *Lego v. Twomey, supra,* 404 U.S. at 489, 92 S.Ct. at 627. Although the Court left the states free to adopt a higher standard, *id.,* it stated its view, with direct reference to *Pea II,* that as to the federal courts, supervisory powers was not a more persuasive basis upon which to employ a higher standard than was the Constitution. *Id.* at 488 n.16, 92 S.Ct. 619. Subsequently, on the basis of *Lego v. Twomey,* this court adopted the constitutionally required minimum standard of "preponderance of the evidence." *Hawkins v. United States,* D.C.App., 304 A.2d 279, 282 (1973).

*Lego v. Twomey* also addressed the jury's role in determining voluntariness and rejected the contention that the jury must pass on the voluntariness question to determine whether they will weigh the confession as substantive evidence of guilt. *Lego v. Twomey, supra,* 404 U.S. at 489–90, 92 S.Ct. 619. The Court thus affirmed that the Constitution requires only that the trial court make an independent determination of voluntariness before permitting the jury to hear the confession. *Sims v. Georgia, supra; Jackson v. Denno, supra.* In holding that the jury did not have a constitutionally mandated role in making the legal determi-nation of admissibility as to an allegedly coerced confession, the Court did not exclude or otherwise denigrate the traditional role of the jury as regards the substantive evidence offered at trial—that is, once the trial court has ruled that a confession or any other item of proof may be admitted into evidence, the jury weighs that evidence in reaching their verdict. Indeed, the jury with a confession as with any other item of evidence, can disregard it entirely. *See Sims v. Georgia, supra,* 385 U.S. at 544, 87 S.Ct. 639. *See also Hall v. District of Columbia,* D.C.App., 353 A.2d 296 (1976). In *Hall,* the defendant urged that the trial court had erred in forbidding him to introduce evidence of a voluntariness issue involving a *Miranda* aspect of his statement made to the police. The court did not reach the question of whether the trial court was in error in failing to permit defendant a chance to relitigate the voluntariness issue before the jury because it found from its examination of the record that the defendant had introduced evidence of voluntariness and that the trial court had instructed the jury that they were to give defendant's statement the weight they deemed proper in light of the surrounding circumstances reflecting on voluntariness. *Id.* at 298 & n.9.

■ Thus, in summary, the law in this jurisdiction is that an allegedly coerced confession shall not be received as evidence by the jury unless and until the trial judge has determined, by a preponderance of the evidence, that the confession was given freely and voluntarily. The trial court's determination must be reliable and clear-cut and his conclusion that the confession is in fact voluntary must appear from the record with unmistakable clarity. If the trial court determines that the challenged confession has not been shown to be voluntary by a preponderance of the evidence it shall not be admitted at trial for any purpose. If, however, the trial court holds the confession voluntary and admissible, the defendant may introduce evidence on the voluntariness issue at trial. The trial court should instruct the jury that they should

give the evidence of defendant's confession such weight as they deem proper in light of the evidence of the surrounding circumstances.[4]

### C.

■■■ If the appellate court, in reviewing a conviction in which an allegedly coerced confession was admitted into evidence, determines that the trial court erred in its duty under *Jackson v. Denno* and its progeny either by failing to conduct the requisite hearing or by rendering a determination that was somehow faulty, the appellate court may choose one of three options to remedy the effect of the error. First, if the appellate court, upon reviewing the record, concludes as a matter of law that the confession was involuntary, it must reverse the conviction and remand the case for a new trial at which the confession shall not be received into evidence. *See Jackson v. United States*, D.C.App., 404 A.2d 911, 923–25 (1979); *Pea [II] v. United States, supra.* Second, if the appellate court, upon reviewing the record, finds that evidence of the voluntariness issue was placed before the jury and that the jury was instructed properly so that they could give the confession the weight they deemed proper, the appellate court should remand the case to the trial court for that court's determination of whether the challenged confession was voluntary. If upon the remand the trial court concludes that the confession was voluntary, the conviction will stand. If, on the other hand, the trial court concludes that the confession was involuntary, the conviction will be reversed and a new trial held at which the confession shall not be admitted into evidence. *See Luck v. United States*, 121 U.S.App.D.C. 151, 154, 348 F.2d 763, 766 (1965). *See also Smith v. Texas*, 395 F.2d 958 (5th Cir. 1968). Finally, if the appellate court, upon reviewing the record, determines that the trial court's error in some way affected or frustrated the defendant's ability to place evidence of voluntariness as it relates to weight before the jury and thereby touched the jury's verdict of guilt— for example, if the trial court excluded properly admissible evidence on the voluntariness-weight issue or failed to instruct the jury properly on that issue—then the appellate court should reverse the conviction and remand the matter for a new hearing on the voluntariness issue to be followed by a new trial. *See Hutcherson v. United States, supra*, 122 U.S.App.D.C. at 56, 351 F.2d at 753. *See also Breedlove v. Beto*, 404 F.2d 1019 (5th Cir. 1968).

### III

■■■ Appellant's pretrial testimony that his statement was the product of physical abuse and threats at the hands of the police was sufficient to raise an issue of voluntariness separate and apart from the *Miranda* issue, already before the court on motion. Although recognizing this fact and promising to deal with it post-trial, the trial

---

4. Instruction 2.46 of the Criminal Jury Instructions for the District of Columbia (3d ed. 1978) is as follows and aptly states the jury's role:

Evidence has been introduced that the defendant [confessed that he committed] [made an admission concerning] the crime charged. You should weigh such evidence with caution and should carefully scrutinize all the circumstances surrounding the [alleged] [confession] [admission] in deciding [whether the defendant made it and] what weight to give it, along with all the other evidence, in determining the guilt or innocence of the defendant.

In examining the circumstances· of the [alleged] [confession] [admission] you may consider whether it was made by the defendant freely and voluntarily with an understanding of the nature of his [confession] [admission],

without fear, threats, coercion, or force, either physical or psychological, and without promise of reward. You may consider the conversations, if any, between the police and the defendant, including whether the defendant was warned of his rights; the time and place that the [alleged] [confession] [admission] occurred; the length of time, if any, that the defendant was questioned; who was present; the physical and mental condition of the defendant; and all other circumstances surrounding the making of the [alleged] [confession] [admission], including the age, disposition, education, experience, character and intelligence of the defendant. In short, you should give the defendant's [alleged] [confession] [admission] such weight as you feel it deserves under all the circumstances.

court failed to determine whether the statement was made freely and voluntarily before it was admitted into evidence as required by *Jackson v. Denno.* Thus the court erred in attempting to defer his consideration of the voluntariness issue to a post-trial hearing. The trial court's failure to make any determination on the voluntariness issue whatsoever, standing alone, would require us to remand the matter to the trial court for this hearing. However, in this case, there is more. The trial court's promise to look into the allegation of coercion after trial has created an unusual posture in this case. At trial appellant did not take the stand to testify, and he did not introduce any other evidence touching upon the question whether appellant's statement was the product of coercion. From the record before us we are unable to discern if this was a tactical decision or, instead, if appellant was lulled by the trial court's assurance that the court would (and could) deal with the matter of coercion after trial. Consequently, because of the importance of the rights involved, we would require a clear indication that appellant's failure to submit this evidence was the result of a deliberate tactical choice.

It is difficult, on this record, to conceive of a legitimate tactical basis for foregoing the presentation of appellant's allegations of brutality to the jury on the issue of what weight they should give the confession. The government's case was strong, the charges were grave, and no defense was presented. Under these circumstances, the normal tactical concern that the jury may disbelieve the defendant or that he might be impeached by prior convictions, would appear simply inapposite. Given our inability to discern a legitimate tactical choice counsel could have been making (and we note that the government suggested none in the brief or oral argument), we would normally be inclined to reverse. However, given the necessity for a remand on the

*Jackson-Denno* issue, we chose to remand on this issue as well. Upon such remand, the trial court should conduct such hearings as appropriate (including the appointment of counsel for appellant) to determine the reason for prior counsel's failure to present evidence to the jury on this issue. The trial court shall make appropriate findings of facts and conclusions of law.[5]

*Remanded for further proceedings consistent with this opinion.*

---

5. We note in passing that the instruction given on voluntariness was not No. 2.46 of the Criminal Jury Instructions for the District of Columbia, but one which was rendered improper by *Hawkins v. United States, supra* at 282. *See* note 3 *supra. Compare* note 4 *supra with* note 2 *supra.* This was harmless to appellant for it gave him *more* than he was entitled to under *Jackson v. Denno, supra.*