Ester T. HAIRSTON, Appellant,

v.

UNITED STATES, Appellee.

No. 83–1531.

District of Columbia Court of Appeals.
Argued June 26, 1985.
Decided Sept. 4, 1985.

Blair Brown, Public Defender Service, Washington, D.C., with whom James Klein and Mark S. Carlin, Public Defender Service, Washington, D.C., were on brief, for appellant.

Lynn Lincoln Sarko, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and NEWMAN and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellant was convicted by a jury of first-degree murder while armed, D.C.Code §§ 22–2401, –3202 (1981), and possession of a prohibited weapon, D.C.Code § 22–3214(b) (1981). His principal claim on appeal is that the trial court erred in refusing to instruct the jury on the weight to be accorded his oral admissions. He also claims the trial court erred in refusing to strike evidence that upon arrest he invoked his right to consult counsel; in allowing redirect examination on rebuttal about prior consistent statements; and in denying a motion for judgment of acquittal on first-degree murder. Concluding that the trial court did not abuse its discretion in denying the request for instruction on appellant's admissions and finding no other reversible error, we affirm.

## I. Failure to Instruct on Admissions

Appellant was convicted of murdering a woman whom he periodically paid to have sex by shooting her once with his shotgun in the back as she was trying to leave her apartment. In the absence of an eyewitness, the government relied on appellant's statements before and after the shooting, witnesses to and physical evidence from the aftermath of the shooting, and expert testimony on firearms and forensic pathology. Appellant contends that because the most damaging evidence was the admissions which were attributed to him by five government witnesses, and because he adduced "substantial evidence" affecting the weight to be accorded the admissions, the trial court was required by precedent as well as 18 U.S.C. § 3501(a) (1985) to give standard jury instruction No. 2.46 [1] on admissions or a similar instruction. The government responds that no error occurred because appellant produced no evidence to show that his statements were involuntary. We first address appellant's two admissions to police officers and then his admissions to lay persons.

### A. Statements to Police Officers

Lieutenant Ashburn testified that when appellant was arrested at his home he said he wanted to make a telephone call to his lawyer. Detective Helwig testified that on the day of appellant's arrest he happened to see appellant at the police station and asked him why he was there. Appellant replied, "she tried to ... she came at me with a table leg and I had to shoot her." Contending that these statements constituted oral admissions,[2] appel-

---

1. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.46 (3d ed. 1978) provides:

CONFESSIONS AND ADMISSIONS—
SUBSTANTIVE EVIDENCE

Evidence has been introduced that defendant [confessed that he committed] [made an admission concerning] the crime charged. You should weigh such evidence with caution and should carefully scrutinize all the circumstances surrounding the [alleged] [confession] [admission] in deciding [whether the defendant made it and] what weight to give it, along with all the other evidence, in determining the guilt or innocence of the defendant.

In examining the circumstances of the [alleged] [confession] [admission] you may consider whether it was made by the defendant freely and voluntarily with an understanding of the nature of his [confession] [admission], without fear, threats, coercion, or force, either physical or psychological, and without promise of reward. You may consider the conversations, if any, between the police and the defendant, including whether the defendant was warned of his rights; the time and place that the [alleged] [confession] [admis-

sion] occurred; the length of time, if any, that the defendant was questioned; who was present; the physical and mental condition of the defendant; and all other circumstances surrounding the making of the [alleged] [confession] [admission], including the age, disposition, education, experience, character and intelligence of the defendant. In short, you should give the defendant's [alleged] [confession] [admission] such weight as you feel it deserves under all the circumstances.

2. Admissions are words or acts of a party-opponent offered as evidence against him. McCORMICK ON EVIDENCE § 262, at 628 (2d ed. 1972); *see also Powell v. United States,* 414 A.2d 530, 533 (D.C.1980) (prior statement inconsistent with party's position in litigation may be introduced into evidence as an admission). The government does not contest appellant's designation as oral admissions his statements to the police officers and lay persons. All of the statements were offered by the government to rebut appellant's defense of accident, to show he was not drunk, and to show consciousness of guilt. The

lant claims the trial court's denial of his request for a cautionary instruction resulted in substantial prejudice. Since appellant requested the trial judge to give instruction No. 2.46 on his statement to Detective Helwig, and since he objected to Ashburn's testimony, our standard of review is whether the failure to give the instruction substantially swayed the jury verdict. *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946).

Appellant relies on the statement by this court in *Wells v. United States*, 407 A.2d 1081, 1089–90 (D.C.1979), that the trial court should instruct the jury that it "must give the evidence of the defendant's confessions such weight as deemed proper in light of the evidence of surrounding circumstances." However, the decision in *Wells* turned on the fact that the trial court, before admitting appellant's confession into evidence, had failed to determine whether it was given freely and voluntarily. At trial, appellant here never contested the voluntariness of his statements, and the circumstances surrounding his statements to the police do not suggest they were coerced or made involuntarily. His argument on appeal, that the evidence of his drinking was "highly material to the weight [to be] accorded the evidence of his confessions," is insufficient to show that his statements were involuntary. Appellant did not offer evidence which was contrary to the testimony of the witnesses who testified that he had been drinking, but was not drunk: his speech was not slurred, he did not stagger when he walked, and he

was able to talk and relate what had happened in a logical, coherent manner.

*Obery v. United States*, 95 U.S.App.D.C. 28, 217 F.2d 860 (1954), *cert. denied*, 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255 (1955), and *Jackson v. United States*, 91 U.S.App. D.C. 60, 198 F.2d 497, *cert. denied*, 344 U.S. 858, 73 S.Ct. 96, 97 L.Ed. 666 (1952), on which appellant relies as controlling authority for the proposition that all admissions—to police officers and lay persons—require cautionary instructions, do not support his claim of error. *Obery* merely cites *Jackson*, which attempted to "lay down no general rule for all cases" and relied on state court decisions for the rationale for giving a cautionary instruction.[3] The state cases are no more supportive of appellant's claim than are cases from this jurisdiction. For example, in *State v. Lantzer*, 55 Wyo. 230, 242–44, 99 P.2d 73, 77 (Wyo.1940), cited in *Jackson* and by appellant, the court simply stated the language of the requested instruction [4] and noted that such language would be appropriate if it referred to evidence of statements that may have been made "under the influence of hope or fear, and to 'the mere repetition of oral statements' that may not have been made at all." Finding that the oral statements were not the result of improper inducements and that there was no reason to doubt that the defendant had made the statements, the *Lantzer* court held that the trial court was not required to give the requested instruction. Here, too, there is no evidence of improper inducements or doubt that appellant made the statements.

Appellant's reliance on 18 U.S.C.

---

trial court's ruling that the statement to Detective Helwig was not an admission was error.

**3.** *Jackson, supra,* was decided prior to *Jackson v. Denno*, 378 U.S. 368, 395, 84 S.Ct. 1774, 1790, 12 L.Ed.2d 908 (1964), which removed from the jury the determination of the voluntariness of a confession. The trial court must make an independent determination prior to permitting the jury to hear the confession. *See also Lego v. Twomey*, 404 U.S. 477, 489–90, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972), wherein the court rejected the view that a defendant has a

constitutional right to have a jury decide the voluntariness issue after the trial court has done so.

**4.** In *Lantzer, supra*, 55 Wyo. at 242–44, 99 P.2d at 77, the defendant requested that the court admonish the jury that an oral statement of guilt was to be received with caution because of the misapprehensions of the witnesses, misuse of words, and various other infirmities, including loss of memory.

§ 3501(a),[5] which requires the trial court to instruct the jury on the weight to be accorded appellant's admissions,[6] is also misplaced. Section 3501(a) provides that a confession is admissible if voluntarily given; it focuses on the procedure to be followed by the trial court and the evidence to be heard by the jury when an issue is raised about the voluntariness of a statement. *United States v. Bernett*, 161 U.S.App. 363, 381–82, 495 F.2d 943, 961–62 (D.C.1974), relied on by appellant, holds only that where a trial court has satisfied itself that a confession was voluntary, it is still required under § 3501(a) to permit the jury to hear relevant evidence on voluntariness and to instruct the jury on the weight to be accorded the confession, and failure to do so is properly considered under the harmless error standard of *Kotteakos, supra.* Other courts interpreting § 3501(a) have generally held that an instruction concerning admissions is not required where no identifiable issue of voluntariness is raised by the evidence presented to the jury. *United States v. Fera*, 616 F.2d 590, 594 (1st Cir.) ("Only if relevant evidence sufficient to raise a genuine factual issue concerning the voluntariness of such statements is presented by the defendant ... is the trial court obligated to instruct the jury concerning the weight to be accorded to the defendant's statements"), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980).[7]

▮ Accordingly, we hold that where there is little if any evidence that a defendant's admission is involuntary, the trial court has discretion whether to give, upon request, an instruction on the weight to be accorded the admission. We find no abuse of discretion in the instant case. The trial court instructed the jury to consider and weigh all the evidence that had been presented in the case, to consider the effect and value of the evidence, to weigh the credibility of the witnesses, and that the weight of the evidence was not necessarily determined by the number of witnesses testifying on either side. The jury was also instructed that it should consider all the facts and circumstances in evidence to determine which witnesses were worthy of greater credence, to evaluate the accuracy of a witness' memory or recollection, and that no greater or lesser credence should be given to the testimony of a witness merely because he was a police officer. We are satisfied that the instructions were sufficient to guide the jury in weighing appellant's statements to the police in light of appellant's general denial and defense of accidental shooting, and in determining whether the evidence of appellant's drinking affected his ability to commit the act or knowingly to make his admissions. The absence of the requested instruction did not affect the jury's verdict since the jury's attention was focused adequately on the message of standard instruction No. 2.46

5. 18 U.S.C. § 3501(a), enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968, provides:

In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issues of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

6. This court has previously presumed the applicability of § 3501(a) to prosecutions brought in the Superior Court. *See, e.g., Hall v. District of Columbia*, 353 A.2d 296, 298 n. 8 (D.C.1976); *Thomas v. United States*, 351 A.2d 499, 500–01 n. 4 (D.C.1976); *Botts v. United States*, 310 A.2d 237, 243 (D.C.1973).

7. *See also United States v. Bondurant*, 689 F.2d 1246, 1249–50 (5th Cir.1982); *United States v. Groce*, 682 F.2d 1359, 1366 (11th Cir.1982); *United States v. Maher*, 645 F.2d 780, 783 (9th Cir.1981); *see also United States v. Fuentes*, 563 F.2d 527, 535 (2nd Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977).

insofar as it .was applicable to the facts of this case.

### B. Statements to Lay Persons

█ Appellant contends six statements [8] made to lay persons constituted oral admissions which warranted standard instruction No. 2.46. Since appellant did not specifically request the instruction for these admissions or object to their introduction into evidence,[9] our standard of review would normally be whether the failure to give the instruction was plain error. Super.Ct. Crim.R. 30 and R. 52(b); *Watts v. United States*, 362 A.2d 706, 708 (D.C.1976) (en banc); *see Jones v. United States*, 477 A.2d 231, 242–43 (D.C.1984); *Johnson v. United States*, 387 A.2d 1084, 1088–89 (D.C.1978). However, because the trial court cut off counsel's explanation of which admissions he wished to have standard instruction No. 2.46 apply, we apply the same standard of review as we did for appellant's admissions to police officers.

█ Appellant's reliance on *Jackson, supra,* and *Obery, supra,* is as unpersuasive here as it was for his admissions to the police. He also relies on *Naples v. United States*, 120 U.S.App.D.C. 123, 344 F.2d 508 (1964), wherein the court noted that "if testimony is allowed as an oral adoptive admission, the jury should be cautioned 'against trusting over much to the accuracy of such testimony' since there are 'great possibilities of error in trusting to recollection-testimony of oral utterances, supposed to have been heard....' " *Id.* at 127, 344 F.2d at 512. Appellant argues that although *Naples* was concerned with the adoptive admission exception to the hearsay rule, it is clear that the court "assumed that similar potential for distortion lies in evidence of express (nonadoptive), oral ad-

missions of a defendant," because the court cited *State v. Bemis*, 33 Cal.2d 395, 202 P.2d 82 (1949). The *Bemis* court held that where appellant had alleged that his confession to a police officer was coerced by beatings and physical abuse, the trial court had erred in failing *sua sponte* to instruct the jury that evidence of an oral admission of the defendant should be viewed with caution. 32 Cal.2d at 396–98, 202 P.2d at 83–84. In these cases, unlike the instant case, voluntariness was an issue. But where there is little if any evidence of involuntariness, there is no basis to conclude that a trial court must, upon request, always give a cautionary instruction to the jury on a defendant's admissions to lay persons.

In addition, the stringent standards governing the admissibility of declarations against penal interest, which are required because doubt persists that the zeal of law enforcement agencies to protect the peace may tinge or warp the facts of a confession, *Laumer v. United States*, 409 A.2d 190, 197 (D.C.1979) (en banc) (citing *Wong Sun v. United States*, 371 U.S. 471, 489, 83 S.Ct. 407, 418, 9 L.Ed.2d 441 (1963)), provide no support for appellant. In *Laumer*, the court referred to the stringent standards in explaining why confessions that are inherently untrustworthy should be rejected, but acknowledged the "fundamental doctrine of substantive criminal law that the confessions and admissions of a criminal defendant, assuming that they are voluntary, are admissible as evidence. *Id.* Indeed, *Laumer* notes that admissions are highly probative of an accused's guilt because it is unlikely that a rational person would admit to a crime if he did not commit it. *Id.*

---

**8.** Appellant refers to his statement to Cecil Kennedy that he would kill the victim if she kept "messing up" or "messing around on him"; his statement to William Randolph that he was going to kill the victim, and his statement in the presence of William Randolph that he was going to "whip her ass"; and his three statements to Crosby Troxler, his nephew: that he had shot

his girlfriend because she was calling his mother names, that he (Crosby) did not have to give a statement to the police, and that the shooting was an accident.

**9.** *See Williamson v. United States,* 445 A.2d 975, 980 n. 5 (D.C.1982) (objection must be specific).

 The trial court instructed the jury that appellant had a right to be a witness and that his testimony should not be disbelieved merely because he was a defendant, that the jury was not required to accept the statements that appellant had said he was going to kill the victim, and that the statements should be considered only for the purpose of determining whether appellant had the intent to commit the crimes, and not as tending to show appellant's guilt. Based on these instructions and others given by the trial court, *see supra* Part I–A, we find no error affecting appellant's substantial rights arising from the trial court's failure further to instruct the jury on appellant's admissions to lay persons. The jury is presumed to follow the instructions, and the record does not indicate that it failed to do so. *See Sherrod v. United States,* 478 A.2d 644, 659 (D.C.1984). The government's evidence against appellant was overwhelming. Three witnesses heard the gunshot and then saw the victim and appellant, who was carrying a shotgun, emerge from her apartment. There was also evidence that appellant had previously threatened to kill and physically injure the victim. *See supra* note 8. Appellant's nephew testified about appellant's admissions after he shot the victim, and the victim twice named appellant as the person who shot her.[10]

## II. Prior Consistent Statements

Appellant also contends that the trial court erred in permitting the government to bolster the testimony of one of its witnesses with prior consistent statements regarding appellant's admissions. Detective Helwig testified on rebuttal that appellant told him he had shot the decedent in self-defense because she came at him with a table leg. On cross-examination, defense counsel asked Detective Helwig whether he had made any notes of the "alleged" state-

ment and whether he had testified before a grand jury; Helwig answered no to both questions. On redirect, the prosecutor asked Helwig if he had told anybody else about his conversation with the appellant, and Helwig responded that he had spoken to members of the U.S. Attorney's Office and to the detective who was handling the investigation. The defense objected on the ground that the prosecutor was eliciting prior consistent statements. The trial court overruled the defense objection to the questions and answers on redirect examination on the ground that the defense had "opened the door" on cross-examination.

 The scope of redirect examination rests within the sound discretion of the trial court and will not be reversed absent a showing of clear abuse. *Beale v. United States,* 465 A.2d 796, 800–801 (D.C.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). We find no such abuse by the trial court in allowing the prosecutor on redirect to obtain the reason Helwig did not make any notes or testify before the grand jury. The limited redirect clarified a possible misleading impression from the defense inquiry that Helwig had omitted an expected police procedure. *Cf. Sherer v. United States,* 470 A.2d 732, 740–41 (D.C.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984). Further, Helwig's testimony was not a significant part of the government's case.

## III. Appellant's Request for Counsel

Appellant contends that the trial court erred in permitting the government to introduce testimony that upon arrest, he exercised his Constitutional right to consult counsel. The record does not support appellant's contention that the prosecutor deliberately elicited this information, although he did ask a follow-up question.[11]

---

**10.** Although the trial court cautioned the jury that the dying declaration was admitted only to show the state of mind of the decedent, it was evidence before the jury for the jury to consider.

*See Young v. United States,* 391 A.2d 248, 251 (D.C.1978).

**11.** The prosecutor asked Lieutenant Ashburn:

In response to defense counsel's objection, the prosecutor explained that his questions were designed to show whether appellant was lucid and able to converse logically. The trial court directed the prosecutor to ask the question directly, and indicated to defense counsel that his request for the testimony to be struck would only call attention to the error; defense counsel agreed.

▮▮▮▮▮ Accordingly, although an immediate cautionary instruction would have been appropriate, *United States v. Williams,* 181 U.S.App.D.C. 188, 190, 556 F.2d 65, 67, *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977), this case is not analogous to *United States v. Liddy,* 166 U.S.App.D.C. 95, 109–111, 509 F.2d 428, 442–43 (1974), where the prosecutor intentionally elicited testimony about defendant's efforts to retain counsel and emphasized that fact in closing argument, and, here, it was not reversible error to refuse such instruction. Here the testimony about wanting to speak to a lawyer was "blurted out," *Williams, supra,* 181 U.S. App.D.C. at 190, 556 F.2d at 67. Although the prosecutor should alert witnesses to avoid such responses, under the circumstances, we are satisfied that the error was harmless beyond a reasonable doubt. *Id.* at 189–90, 556 F.2d at 66–67; *see Chapman v. California,* 386 U.S. 18, 23–24, 81 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). The evidence of guilt was strong, and the prosecutor made no further reference to appellant's statement about wanting to speak to counsel.

## IV. Motion for Judgment of Acquittal

▮▮▮▮▮ Finally, appellant's claim that the trial court erred in denying his motion for a judgment of acquittal on first-degree murder is without merit. The evidence [12] provided sufficient support for the trial court to submit the issue of premeditation and deliberation to the jury. Factors which we have found persuasive in finding evidence of premeditation and deliberation were present in this case: motive, prior threats, and a murder weapon brought to the scene by the defendant. Further, the manner and circumstances of the death were particularly telling: the victim was dressed only in a light top and pants when she was shot in the back as she was leaving the apartment; her blood dripped on the fallen snow and appellant was seen shortly thereafter calmly leaving the apartment with a shotgun as he walked away from the victim's fallen body. These factors were sufficient to show a "planned and calculated intent to kill." *See, e.g., Jones, supra,* 477 A.2d at 231; *Frendak v. United States,* 408 A.2d 364, 371 (D.C. 1979); *Hall v. United States,* 454 A.2d 314, 317–18 (D.C.1982). Accordingly, we find no error by the trial court in denying appellant's motion for judgment of acquittal on first-degree murder.

*Affirmed.*

Q. After you saw Mr. Hairston, did you not identify yourself?
A. Yes, I did.
Q. *Without going into the details of what was said,* did you have any conversation with him? [emphasis supplied.]
A. Yes, sir.
Q. Can you tell us approximately how long you conversed with him?
A. Probably ten seconds until the time I placed him under arrest. *And moments after that, he interrupted my remarks to him and said he wanted to make a telephone call to call his lawyer.* [emphasis supplied.]
Q. Did you permit him to do that?
A. Yes, sir.

Q. After he made that phone call, did you have any—*without going into what you said,* did you have any further conversation with him? [emphasis supplied.]

12. Because appellant introduced evidence following the denial of his motion for judgment of acquittal at the close of the government's case-in-chief, we may consider all of the evidence in determining the sufficiency of the evidence. *Hawthorne v. United States,* 476 A.2d 164, 167 (D.C.1984); *Bedney v. United States,* 471 A.2d 1022, 1024 n. 3 (D.C.1984); *Clark v. United States,* 418 A.2d 1059, 1062 n. 2 (D.C.1980); *Franey v. United States,* 382 A.2d 1019, 1021–22 (D.C.1978).