Dwayne A. POWELL, Appellant,

v.

UNITED STATES, Appellee.

Ernest C. SUESBURY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 79–452, 79–350.

District of Columbia Court of Appeals.

Argued April 16, 1980.

Decided May 5, 1980.

---

John E. Ormond, Jr., Washington, D.C., appointed by the court, for appellant Powell.

John L. King, Washington, D.C., was on brief, for appellant Suesbury and submitted without oral argument.

Anthony C. DiGioia, Asst. U.S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U.S. Atty., John A. Terry, Michael W. Farrell, and Richard C. Otto, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and FERREN and PRYOR, Associate Judges.

PER CURIAM:

Appellants each raise a claim of error stemming from their convictions at a joint trial. Powell contends that the trial court erred in failing to instruct the jury on prior inconsistent statements made by a witness. Suesbury asserts that the court should not have permitted a witness to testify regarding an admission made by Suesbury. We find no merit in either argument and thus affirm.

## I.

Appellants were charged with second degree burglary, D.C.Code 1973, § 22–1801(b), destruction of property, *id.* at § 22–403, and petit larceny, *id.* at § 22–2202. The charges arose from an incident beginning on October 17, 1977 when appellants met Stephen Lee at about 9 p. m. at a restaurant called Kojacks. Lee told Suesbury that he needed money, and Suesbury said that he would pay Lee for kicking in a window. Lee left appellants for several hours and then met them again at Kojacks at about 12:30 a. m. (October 18). The three men walked in the area for some time, and finally stopped at Grigg Opticians. Lee kicked the Grigg window twice, breaking the glass, while appellants stood nearby. At that point Suesbury told his companions that someone was watching. Lee took a pair of sunglasses from the window display and the three men ran. Lee and Powell were arrested within minutes: Suesbury was arrested about seven weeks later.

At a joint trial before a jury, Lee testified for the government, describing his own involvement and that of the appellants. Lee's description of the events taking place in front of Grigg's was corroborated by the testimony of David Johnson, who witnessed the breaking of the window from his position as a security guard in a building across the street. Suesbury did not take the stand, but he did call four witnesses who testified that he spent the evening of October 17 at the movies and dining at Kojacks and that he returned home at about 11:30 p. m. Powell neither took the stand nor presented a defense. Both appellants were found guilty of all three charges and were sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1976).

## II.

Powell contests the trial court's refusal to give Criminal Jury Instruction for the District of Columbia, No. 1.06 (3d ed. 1978) on evaluation of prior inconsistent statements of a witness.[1] Powell contends that the instruction was justified because of a discrepancy between David Johnson's testimony at trial and before the grand jury. More specifically, Powell asserts that, at trial, Johnson testified Powell and Suesbury were not conversing as they approached the Griggs' window; before the grand jury he stated that they had been talking.

We find no error in the trial court's refusal to give the requested instruction. First, we note that the asserted discrepancy in Johnson's testimony is minimal. At trial, defense counsel for Suesbury rephrased co-counsel's question as to whether the witness had "ever seen these *three* men talking while you were observing them" (emphasis added), and Johnson answered in the negative. He was impeached with his grand jury statement, in which he had agreed that "the *two* [Powell and Suesbury] were talking together" (emphasis added) as they approached the window. Although the witness stated that his grand jury testimony was incorrect, the two statements are reconcilable, and the jury need not have concluded that the statements were inconsistent. But even if the statements were inconsistent, we cannot conclude that Powell has met the standard for entitlement to the instruction.

Specifically, "an accused is entitled to an instruction . . . if there is 'any evidence fairly tending to bear upon the issue . . . ,' however weak . . . ." *Belton v. United States*, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967), quoting *Ste-*

---

1. The appropriate portion of instruction 1.06 for use in the Superior Court is:

   The testimony of a witness may be discredited or impeached by showing that he has previously made statements which are inconsistent with his present testimony. Such prior statements are admitted into evidence solely for your consideration in evaluating the credibility of the witness. Should you find the prior statements to be inconsistent, you may consider such statements only in connection with your evaluation of the truth of the witness's present testimony in court. You must not consider the prior statement as establishing the truth of any fact contained in that statement.

   See *Johnson v. United States*, D.C.App. 387 A.2d 1084, 1085 n. 1 (1978) (en banc) (prior inconsistent hearsay statements cannot be introduced as substantive evidence).

venson v. United States, 162 U.S. 313, 323, 16 S.Ct. 839, 842, 40 L.Ed. 980 (1896). Accord, Montgomery v. United States, D.C. App., 384 A.2d 655, 660 (1978) ("a defendant is entitled to an instruction on his theory of the case when properly requested by counsel and when the theory is supported by any evidence"). The specific question whether Powell and Suesbury were talking in front of Griggs was not "a theory" or "an issue" in this case. Proof of a conversation between the two men at that point was not necessary to establish any element of the crimes charged. Nor would proof of such a conversation, or its absence, aid in establishing a defense. Testimony regarding conversation among the men was an insignificant point in light of Johnson's description of the crime itself and his eyewitness identification of appellants. We acknowledge that the credibility of witnesses is always at issue when there is evidence conflicting with their testimony. But the trial judge did give the general credibility instruction, Criminal Jury Instructions for the District of Columbia, No. 2.11, which adequately placed this question before the jury.[2] We thus find no error in the trial court's refusal to give the specific instruction on prior inconsistent statements.

## III.

Suesbury raises a different claim of error. After four members of Suesbury's family had testified that he had gone to the movies and then home to bed on the night of the burglary, the government called a detective in rebuttal. The detective testified that he had interviewed Suesbury several days after the burglary and that Suesbury claimed to have been in the Capitol Book Store at the time of the crime.

Suesbury argues that the testimony was inadmissible hearsay because it was not used for impeachment of Suesbury, who never took the stand, and it was not a statement against penal interest, because it was exculpatory. The government, however, relies on neither of these theories, but upon the fact that Suesbury's statement to the detective was an admission by a party which may be entered into evidence despite the fact that the party does not testify.

We agree that the trial judge properly permitted the detective to testify.[3] "When a party makes a prior statement which is inconsistent with his position in the litigation, it may be introduced into evidence as an admission." Johns v. Cottom, D.C.App., 284 A.2d 50, 52 (1971) (citations omitted). Such admissions may be introduced for the truth of the matter asserted in criminal as well as civil proceedings. See Smith v. United States, D.C.App., 312 A.2d 781, 784–85 (1973). There can be no doubt that Suesbury's assertion that he was in the Capital Book Store at the time of the crime was contrary to the defense he presented at trial, and was relevant to the issue of whether or not he was at the scene of the crime. Such "admissions of a party come in as substantive evidence of the facts admitted, and . . . no foundation or predicate, by examining the party himself, such as may be required for impeaching evidence, is prerequisite for proof of admissions." McCormick on Evidence, § 262 at 629–30 (2d ed. 1972) (footnotes omitted). Accord, Cox v. Esso Shipping Co., 247 F.2d 629, 632 (5th Cir. 1957); 4 Wigmore on Evidence, § 1051(2) at 14 (1972).[4]

*Affirmed.*

---

2. The court stated the following in its general credibility instruction:

   Inconsistencies or discrepancies in the testimony of a witness or between the testimony of two witnesses may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. An innocent misconception like failure of recollection is not an uncommon experience. In weighing the effect of the discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the discrepancy results from innocent, fair, or intentional falsehood.

3. Suesbury concedes that the statements made to the detective were not obtained illegally.

4. We find no merit in Suesbury's assertion that use of this testimony at trial deprived him of his Fifth Amendment rights.