Angel DAVIS, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CF–5.

District of Columbia Court of Appeals.

Submitted Jan. 6, 1993.
Decided April 20, 1993.

Relinda Eddie, Fort Washington, MD, appointed by the court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Barbara A. Grewe, Asst. U.S. Attys., Washington, DC, were on the brief for appellee.

Before TERRY, KING and SULLIVAN, Associate Judges.

TERRY, Associate Judge:

Appellant Davis was convicted of possession of heroin with intent to distribute it and possession of cocaine with intent to distribute it.[1] She contends on appeal that the trial court erroneously denied her motion for judgment of acquittal. Davis also asserts that the admission of certain testimony by her parole officer, whom the government called as a rebuttal witness, was improper for three reasons. First, she argues that it should have been excluded because it was not disclosed before trial as required by Super.Ct.Crim.R. 16(a)(1)(A), and that its admission resulted in unfair surprise. Second, she maintains that it was improperly presented as rebuttal testimony. Finally, she contends that its admission violated her rights under the Sixth Amendment. We reject all of these claims of error and affirm both convictions.[2]

**I**

Angel Davis and Norletta Jones were arrested on July 21, 1988, after the police executed a search warrant at the home of Davis' mother at 1117 Orren Street, N.E. Davis was present at the time of the search but identified herself to the police as Sabrina Baber.[3] In the course of the search, the police came upon a padlocked bedroom with a nameplate on the door on which was inscribed the name "Angel." Davis, pretending to be Sabrina Baber, told the police that the padlocked bedroom belonged to her sister Angel. Officer Kirk Delpo forced the door open, went inside, and found a denim jacket hanging on the door of a cabinet.[4] Examining the jacket, Delpo found in its pockets two brown paper bags. One of them contained 115 plastic packets of heroin; the other contained 36 plastic ziplock bags of cocaine in powder form. Another ziplock bag containing four packets of crack cocaine was found in a dresser drawer, and an additional packet of heroin was discovered under a candle holder.

The police also found in the same bedroom various papers and personal items bearing the names of both Angel Davis and Norletta Jones. Among these were an automatic teller machine card from a bank, a social security card, a calendar, a check-cashing card, and payroll check stubs, on each of which was written or imprinted the name "Angel Davis," as well as an automobile registration document, a traffic ticket, and several letters and other pieces of mail addressed to, or issued in the name of, "Angel Davis, 1117 Orren Street, N.E." Additional items included a bank statement and other pieces of correspondence addressed to Norletta Jones at an address on Clifton Street, N.W., as well as a checkbook with checks bearing Ms. Jones' name and the Clifton Street address. Finally, the police recovered a purse from the bedroom containing, among other things, drug paraphernalia (spoons, a pipe, and chemicals) and personal papers bearing Ms. Jones' name. A search of Ms. Davis incident to her arrest produced $341 in cash and the key to the padlock on the bedroom door.

At trial the government presented testimony from the officers who executed the search warrant and arrested Ms. Davis and Ms. Jones. The government's proof also established that the bags seized from the bedroom contained heroin and cocaine, and an expert witness testified that the quantity and packaging of the narcotics found in the denim jacket in the bedroom were consistent with an intent to distribute. Davis' defense was that the padlocked bedroom was not hers but that of Ms. Jones, and that she herself was living with her sister

---

1. D.C.Code § 33–541(a)(1) (1988).

2. Davis and a co-defendant, Norletta Jones, were jointly indicted, tried, and convicted. Jones also appealed, but for some reason, contrary to this court's usual practice, her appeal was not consolidated with that of Davis. Jones' conviction was affirmed in an unpublished memorandum opinion and judgment. *Jones v. United States*, No. 90–CF–67 (D.C. June 18, 1992).

3. Sabrina Baber is appellant's sister.

4. Officer Delpo described the cabinet as a "free-standing closet." On its side was written the name "Angel."

in Suitland, Maryland, a suburb of Washington, on the date of the search. Davis herself did not testify, but both her mother and her sister testified to this effect.

Norletta Jones testified in her own defense. She stated that the padlocked bedroom was hers, that the denim jacket was hers, and that the drugs found in the jacket were also hers but were solely for her personal use. She explained that Davis had the key to the padlock because Davis had borrowed her car that day, and all the keys were together on the same key ring. Jones testified that she kept official papers bearing Davis' name (*e.g.*, Davis' social security card, bank card, and tax returns) in the bedroom. She said that she would typically collect mail for Davis, keep it in the bedroom, and then give it to Davis on weekends. Jones acknowledged on cross-examination, however, that the letters and other pieces of mail found in the bedroom bore postmarks ranging from January 28 through July 18, 1988.

In rebuttal the government called Davis' parole officer, Raymond Ward.[5] Mr. Ward testified, without revealing his occupation or the reason for his conversations with Ms. Davis, that on both July 14 and August 4, 1988, *i.e.*, on dates before and after her arrest in this case, Davis was "required" to tell him her address and that Davis told him she was living at her mother's home at 1117 Orren Street, N.E.

## II

Davis argues that the trial court erred in denying her motion for judgment of acquittal because there was insufficient evidence to connect her with the drugs found in the bedroom or to establish an intent to distribute those drugs. This argument is essentially frivolous.[6]

The government's evidence at trial established, among other things, that Davis' name was on a nameplate affixed to the door of the bedroom containing the drugs, that she had the key to the padlock on that door, that her name was also written on the outside of the cabinet where the denim jacket was hung, that she attempted to deceive the police by concealing her identity and by telling them that the bedroom was her sister's, that important personal papers and other items bearing her name were found in the bedroom, that on several of these papers her name was followed by the Orren Street address, that the denim jacket in which most of the drugs were found was her size but was several sizes too big for her co-defendant, that she was present in the house at the time of the search, and that she told Mr. Ward, both before and after the date of the search, that she was living in that house.[7] The jury could reasonably conclude from this evidence that Davis was in constructive possession[8] of the drugs seized from the

---

**5.** The trial court had previously ruled, as a sanction for violating Super. Ct.Crim.R. 16(a)(1)(A), that the government could not call Mr. Ward during its case in chief. The violation lay in the government's failure to disclose before trial the existence and substance of Davis' statements to Mr. Ward. The court permitted Ward to testify in rebuttal, however, to enable the government to rebut the testimony of Davis' mother and sister that Davis lived with her sister at the time of her arrest.

**6.** The standard by which we assess Davis' sufficiency argument has been reiterated in hundreds of cases. We view the evidence in the light most favorable to the government, recognizing the right of the jury to determine the credibility of witnesses and to draw all reasonable inferences from the evidence. In addition, we make no distinction between direct and circumstantial evidence. *See, e.g., Lawson v. United States,* 596 A.2d 504, 509 (D.C.1991) (citing cases).

**7.** To be sure, the evidence was not totally one-sided. Davis offered testimony from her mother and sister that she was living with her sister elsewhere at the time and that the padlocked room was that of her co-defendant, Norletta Jones. Jones corroborated this testimony, telling the jury that the jacket was hers (even though it was a size 20 and she was a size 14) and that she had placed Davis' personal papers in the room. Nevertheless, the law is clear that any conflict in the evidence is properly left to the jury to resolve. *E.g., Hill v. United States,* 541 A.2d 1285, 1287–1288 (D.C.1988).

**8.** *See, e.g., Parker v. United States,* 601 A.2d 45, 50–52 (D.C.1991); *Bernard v. United States,* 575 A.2d 1191, 1195 (D.C.1990); *United States v. Hubbard,* 429 A.2d 1334, 1338 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981).

padlocked bedroom. The evidence raised a permissible inference that she was aware of the existence of the illegal drugs and that she was able to "guide [their] destiny" [9]—*i.e.*, that she enjoyed "convenient access or ready accessibility" [10] by virtue of holding the key to the padlock on the door, and that she was therefore "in a position to exercise dominion or control" over the drugs. *Greer v. United States*, 600 A.2d 1086, 1087 (D.C.1991).

Davis' corollary argument, that there was insufficient evidence to establish an intent to distribute these drugs, is even less substantial. The police retrieved a total of 151 packages of narcotics from the denim jacket, plus five more from other places in the same locked bedroom. The government presented unrebutted testimony by an expert on the distribution of illegal narcotics that the quantity and packaging of these drugs was consistent with an intent to distribute them. We have repeatedly held that the packaging of narcotics so as to make them ready for sale to individual purchasers is "strong evidence of an intent to distribute." *Edmonds v. United States*, 609 A.2d 1131, 1132 (D.C. 1992); *accord, e.g., Chambers v. United States*, 564 A.2d 26, 31 (D.C.1989) ("The fact that the cocaine was in separate packages, rather than in one large mass, is evidence of an intent to distribute"); *Shorter v. United States*, 506 A.2d 1133, 1135 (D.C.1986); *see also Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). Davis' challenge to the sufficiency of the evidence on this ground is totally without merit.

### III

■ Raymond Ward, Davis' parole officer, testified for the government as a rebuttal witness. Ward recounted to the jury certain statements made by Davis during two meetings with him, one shortly before and one shortly after her arrest in this case, that she was then living with her mother at 1117 Orren Street, N.E. The prosecutor was careful not to elicit Mr. Ward's occupation or the reason for these meetings so as to avoid prejudicing Davis with exposure of her criminal record. His testimony was limited to the fact that they met on July 14 and August 4, that Davis was "required" to tell him where she was living, and that on both occasions she said she was living at her mother's home on Orren Street.

The trial court had barred the government from presenting Mr. Ward's testimony in its case in chief, reasoning that the substance of Davis' statements to Mr. Ward should have been disclosed before trial pursuant to Super. Ct.Crim.R. 16(a). The court allowed Ward to testify in rebuttal, however, to refute the defense claim that Davis was living in Maryland at the time. The court was persuaded that Ward's testimony was proper rebuttal under *Powell v. United States*, 414 A.2d 530 (D.C.1980),[11] and that it need not be excluded from the government's rebuttal case as a further sanction for its violation of Rule 16(a).

Davis makes three arguments against the admissibility of Mr. Ward's testimony. First, she contends that its admission violated Super.Ct.Crim.R. 16(a)(1)(A) and resulted in unfair surprise at trial. Second, she maintains that it was improperly admitted in rebuttal because she did not testify. Finally, Davis argues that its admission

---

9. *United States v. Staten,* 189 U.S.App.D.C. 100, 105, 581 F.2d 878, 883 (1978).

10. *Brown v. United States,* 546 A.2d 390, 395 (D.C.1988).

11. We agree with the trial court on this point. In *Powell* several members of the defendant's family testified in support of an alibi defense, but their testimony contradicted a prior statement by the defendant to the police concerning his whereabouts at the time of the crime. We held that the prior statement could be introduced into evidence in rebuttal as an admission, even though the defendant himself did not testify, because it was "inconsistent with his position in the litigation...." 414 A.2d at 533 (quoting *Johns v. Cottom,* 284 A.2d 50, 52 (D.C.1971)). In the case at bar, Davis' theory of defense was that the bedroom was not hers and that she was living in Maryland at the time, but this theory was contradicted by Davis' own statements to Mr. Ward. Thus, under *Powell,* Davis' failure to testify was irrelevant, and Ward's testimony was properly introduced in rebuttal.

violated her Sixth Amendment rights "because it was difficult to cross-examine [Mr. Ward] about the two statements" without revealing that he was Davis' parole officer and because the statements were made out of the presence of her counsel. We reject all three of these contentions.

Rule 16(a)(1)(A) requires the government to disclose to a defendant, before trial, "the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent...."[12] The rule is designed "to enable defense counsel to prepare adequately for government efforts to incriminate the defendant through his own words, often a particularly damning form of evidence, and to permit defense counsel to make informed judgments regarding the strength of the prosecution's case...." 8 J.W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 16.-04[1][a], at 16–63 (2d ed. 1993); *see also United States v. Lewis*, 167 U.S.App.D.C. 232, 236, 511 F.2d 798, 802 (1975); *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir.1974).

The government does not argue that Davis' statements to Mr. Ward were not subject to discovery under Rule 16(a)(1)(A), and we assume, for the sake of argument, that they were. Accordingly, the government was obligated to provide Davis with "the substance of" those statements[13] in advance of trial. It did not do so. In such circumstances a trial court is vested with "broad discretion in implementing any of the provisions of Rule 16(a)(1)(A)." 8 MOORE'S FEDERAL PRACTICE, *supra*, § 16.-04[1][e], at 16–79 (footnote omitted).

■ Rule 16(d)(2), which governs the sanctions available to a trial judge confronted with a violation of Rule 16(a)(1)(A), provides in pertinent part:

If at any time during the course of the proceedings it is brought to the attention of the Court that a party has failed to comply with this Rule, the Court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such orders as it deems just under the circumstances.

In other words, the range of available sanctions is extremely broad, the only real limitation being that a sanction must be "just under the circumstances." *See* 8 MOORE'S FEDERAL PRACTICE, *supra*, ¶ 16.04[1][e].[14] The discretion specifically granted by Rule 16(d) comports with our general rule that a trial court enjoys broad "authority to fashion an appropriate sanction" for violation of any discovery rule. *E.g., Cotton v.*

---

**12.** This part of the Superior Court rule is identical to the corresponding portion of its federal counterpart, FED.R.CRIM.P. 16(a)(1)(A). We have held that, insofar as the two rules are "substantially the same," Superior Court Rule 16 should be "construed consistently with the federal rule...." *Waldron v. United States*, 370 A.2d 1372, 1373 (D.C.1977) (citation omitted).

**13.** *See Yoon v. United States*, 594 A.2d 1056, 1060 (D.C.1991) (the term "substance" may include what is not said, as well as what is said, when the government plans to use the statement to "impeach with an omission"), *amended in part on other grounds*, 610 A.2d 1388 (D.C.1992); *Smith v. United States*, 491 A.2d 1144, 1147 (D.C.1985) ("'Substance' in this context connotes disclosure 'in enough detail to minimize the undesirable effects of surprise at trial and otherwise contribute to the fair and efficient administration of criminal justice'" (citation omitted)).

**14.** Professor Moore suggests that a court may choose from a wide array of permissible sanctions under Rule 16(d)(2), including the one imposed by the trial court in this case:

The judge may issue a protective order authorized under subdivision (d)(1) of the rule to limit, condition or deny disclosure of the defendant's statements. In addition, the judge has several options, short of declaring a mistrial, to remedy a government failure to provide the required pretrial disclosure of the defendant's statements. The court may order immediate disclosure of the statement at trial if the defendant suffers no prejudice from the delay in disclosure; order exclusion of the statement from the government's case in chief, or even for rebuttal purposes; or order a continuance sufficient to prevent the defendant from being unfairly surprised and unprepared for the introduction of the statement into evidence.

8 MOORE'S FEDERAL PRACTICE, *supra*, ¶ 16.04[1][e], at 16–79 (footnotes omitted).

*United States,* 388 A.2d 865, 869 (D.C. 1978); *see also Lee v. United States,* 385 A.2d 159, 163 (D.C.1978) (listing some factors to be considered by trial court in imposing sanctions); *Wiggins v. United States,* 521 A.2d 1146, 1149 (D.C.1987) (applying *Lee* factors). Disallowing use of Mr. Ward's testimony in the government's case in chief, but permitting its use in rebuttal, falls within the range of sanctions permitted under Rule 16(d)(2). We find no abuse of discretion here, and hence no reversible error. *E.g., Brown v. United States,* 409 A.2d 1093, 1099–1100 (D.C. 1979).

Even if the court had erred in admitting Mr. Ward's rebuttal testimony, reversal would be inappropriate in this case. Our decisions make clear that reversal for a violation of Rule 16(a) "is warranted only where there is error which has substantially prejudiced appellant's rights." *Washington v. United States,* 600 A.2d 1079, 1081 (D.C.1991) (citation omitted). Davis' injury, if any, does not rise to that level. When the court ruled before trial that Ward's testimony would be excluded from the government's case in chief, it made clear the limited nature of its ruling: "I find that to bring out the statement to the parole officer *at this time* would be inappropriate" (emphasis added). Davis does not suggest now that she misunderstood what the court said. More importantly, this pre-trial ruling demonstrates that Davis had notice of the statement at some point before the beginning of trial and thus cannot fairly claim surprise at its admission in rebuttal. Her claim of prejudice, based on her claim of surprise, thus evaporates. *See United States v. Caldwell,* 178 U.S.App.D.C. 20, 40, 543 F.2d 1333, 1353 (1974) (no prejudice because defense counsel was made aware of statements at pretrial hearing), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States v. Scafe,* 822 F.2d 928, 936 (10th Cir.1987) (no prejudice because defendant was aware of statement before taking the stand); *United States v. Heath,* 580 F.2d 1011, 1021 (10th Cir.1978) (same), *cert. de-*

*nied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). Moreover, as the trial court recognized, the testimony was proper rebuttal under *Powell v. United States, supra.* See also *Derrington v. United States,* 488 A.2d 1314, 1333 & n. 27 (D.C. 1985).

■ Finally, Davis contends that the admission of Mr. Ward's testimony violated certain of her Sixth Amendment rights. She makes two distinct Sixth Amendment claims. First, she maintains that because it was "difficult" to cross-examine Mr. Ward about the two statements without divulging that he was her parole officer, her rights under the Confrontation Clause were infringed. This claim is meritless. The Confrontation Clause of the Sixth Amendment guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (emphasis in original; citation omitted); *see also United States v. Owens,* 484 U.S. 554, 559–560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *Delaware v. Van Arsdall,* 475 U.S. 673, 678–679, 106 S.Ct. 1431, 1434–1435, 89 L.Ed.2d 674 (1986). Davis' first Sixth Amendment claim must fail under the *Fensterer* line of cases. Her counsel had the opportunity for cross-examination of which the cases speak and took advantage of it.

■ Next, relying on *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), Davis argues that because adversarial proceedings had already begun in the instant case, her statements to Mr. Ward were taken in violation of her right to the presence of counsel. We do not agree. Mr. Ward testified to interviews with Davis that occurred both before and after her arrest in this case. Even assuming that such a right arose upon her arrest,[15] and assuming further that the right was properly asserted (although the record suggests otherwise), she surely had

---

**15.** *But see United States v. Gouveia,* 467 U.S. 180, 190, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) ("we have never held that the right to counsel attaches at the time of arrest").

no such right before her arrest. *See Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972) (right to counsel attaches "only at or after [initiation of] adversary judicial proceedings" (citing cases)). Since the content of Davis' two statements was identical, and since one of them was made several days before her arrest in this case, the post-arrest statement was merely cumulative of the earlier, admissible pre-arrest statement. Thus the admission of the post-arrest statement, if error at all, was harmless, especially in light of the strong evidence of guilt apart from that statement. *See, e.g., Giles v. United States,* 432 A.2d 739, 746–748 (D.C. 1981).

### IV

The judgment of conviction is accordingly

*Affirmed.*