Sean Vincent ALLEN, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–1491.

District of Columbia Court of Appeals.

Argued April 6, 1994.
Decided Oct. 31, 1994.

**550**

Gregory Burr Macaulay, Washington, DC, for appellant.

G. Michael Lennon, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Corbin A. Weiss, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before WAGNER, Chief Judge,[*] SULLIVAN, Associate Judge, and MACK, Senior Judge.

SULLIVAN, Associate Judge:

After a jury trial, appellant, Sean Allen (Allen), was convicted of one count of unauthorized use of a motor vehicle (UUV), D.C.Code § 22–3815 (1989), one count of possession of an unregistered firearm, *id.* § 6–2311 (1994 Supp.), and one count of possession of ammunition, *id.* § 6–2361 (1989). On appeal, appellant argues that the trial court abused its discretion by (1) denying appellant's motion for a mistrial because of the government's belated disclosure of the complete oral statement made by appellant to the arresting officers; (2) not imposing sanctions on the government for its failure to preserve the key to the automobile and the yellow inventory control tag on which the key was attached; and (3) denying appellant's motion for a mistrial because of alleged inflammatory and prejudicial rhetoric used by the prosecutor in opening, closing, and rebuttal arguments. Appellant also contends that the trial judge committed reversible error by communicating *ex parte* to the jury in response to a jury note. We affirm.

### I.

On April 27, 1991, at approximately 3:30 a.m., Sergeant Gary Glenn of the Metropolitan Police Department was parked in his marked cruiser on Q Street, Southwest, just west of Half Street. He saw appellant driving south on Half Street in a 1987 Acura Legend. When appellant reached the stop sign at Q Street, he applied his brakes "a little late, sliding on loose gravel and just into the intersection." He then made a right turn onto Q Street and drove past Sergeant Glenn's cruiser. As appellant drove past him, Sergeant Glenn noticed that there was a Maryland licence plate on the rear of the car, but no tag on the front. For that reason, Sergeant Glenn turned his cruiser around and began to follow the Acura. He ran the license plate number of the car through the police computer system, was advised by his dispatcher that the Maryland license plate had been reported stolen, and called for backup units to assist him in stopping the car.

Sergeant Glenn and other officers stopped appellant and his passenger[1] on Suitland Parkway, near Stanton Road. The officers ordered the appellant and his passenger out of the car. Sergeant Glenn checked inside the car and observed a single key in the ignition and the stock of a handgun protruding from under the driver's seat. Officer Joseph Gingrich also observed the butt of a firearm underneath the driver's seat.

Appellant was then arrested and taken to the First District police station. Officer David Hobbs "put the vehicle on the property book" and filled out the property report. The key was then attached to a property tag, and the tag stapled to the property form, pending return of the vehicle to the owner. Officer Gingrich, after advising appellant of his *Miranda*[2] rights, asked appellant where

---

[*] Chief Judge WAGNER was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on June 14, 1994.

1. The passenger was a seventeen-year-old juvenile who, for that reason, was referred to by his initials, "D.W.," during appellant's trial.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After being advised of his rights, appellant indicated that he understood those rights and waived them, both orally and in writing.

he had gotten the car. Appellant told Officer Gingrich that, shortly before leaving for the East Side Club [3] that evening, he had been walking down the street, and a female "crack head" [4] had given him the keys to the car for five dollars. Officer Gingrich made it known that he did not believe appellant, and appellant then told the officer he had nothing else to say.

A representative for Templeton Oldsmobile came to the First District police station after being notified that the Acura Legend had been recovered. Both the key and the car were released to him. The dealer sold the car, with the key, approximately three days later.

In addition to the police officers involved in this case, Roger Gehring, the used car manager at Templeton Oldsmobile at the time the car was stolen, testified at trial about how the dealership kept the keys to the cars on the lot. He testified that the keys were kept on a board inside a closet, and that there was a yellow tag attached to each ring.

Appellant did not testify at trial. The substance of the testimony of all four of his witnesses was that appellant had his own 1984 BMW, and therefore did not need to be involved with a stolen car.

## II.

■ Appellant contends that a mistrial should have been granted because the government failed to disclose before trial the entirety of an oral statement made by appellant to the arresting officers. Super.Ct.Crim.R. 16(a)(1)(A) provides in relevant part that:

> [u]pon request of a defendant the prosecutor shall disclose to the defendant and make available for inspection, copying, or photographing: ... the substance of any ... relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a gov-

ernment agent if the government intends to use that statement at trial.

■ In construing Rule 16, this court has held that " '[s]ubstance' in this context connotes disclosure 'in enough detail to minimize the undesirable effects of surprise at trial and otherwise contribute to the fair and efficient administration of criminal justice.' " *Smith v. United States,* 491 A.2d 1144, 1147 (D.C.1985) (citation omitted). The government's response to a defendant's inquiries regarding the substance of the statement must be accurate and unambiguous. *Id.* Here, appellant contests the admission of the statement made by Officer Gingrich at trial and contends that he was denied a fair trial because the full extent of the statement was not disclosed to appellant during pretrial discovery.

After his arrest, appellant made a statement to Officer Gingrich while he was in the cellblock. Officer Gingrich testified to the substance of appellant's oral statement during a preliminary suppression hearing. According to the officer,

> [t]he defendant stated that shortly before he had left to go to the *east side* that evening, he was on foot walking down a street in Maryland and he had a conversation with a female who he referred to as a crack head and the female gave him the keys to the vehicle in exchange for $5.

(Emphasis added.) At the end of the suppression hearing, the trial court ruled that the government could use appellant's statement. The court also ruled that "there are no other statements that the [g]overnment can use from the defendant in its case in chief, that is the statement."

At appellant's trial, Officer Gingrich testified that appellant told him that the car had come from a female crack head that appellant encountered in Maryland "shortly before he left that evening for the *East Side Club.*" (Emphasis added.) Appellant's trial counsel

---

**3.** There was a dispute at trial regarding whether appellant told Officer Gingrich he had been en route to the "east side" or the "East Side Club" the evening he was arrested. A discussion of the trial judge's resolution of this issue is provided in Part II, *infra.*

**4.** "Crack head" is street slang for a heavy user of crack cocaine.

made no objection to the officer's testimony. The following morning, however, appellant's counsel moved for a mistrial, asserting that the government had not disclosed previously a portion of the oral statement during pretrial discovery in violation of Super.Ct.Crim.R. 16—that portion of the statement in which appellant allegedly stated that his destination was the East Side Club instead of the "east side." The trial judge found appellant's counsel's argument to have some merit and therefore instructed the jury as follows:

On yesterday you heard testimony from Officer Gingrich ... that following that advisement of rights that the defendant elected to make a statement and that a portion of that statement that he made began with "shortly before leaving for the *East Side Club*" and then you will recall yourselves the remainder of that testimony.

And the Court today has determined for legal reasons that you are to disregard so much of the statement that the witness reported was made to him by Sean Allen ... as begins with the phrase "shortly before leaving for the East Side Club." The remainder of that statement is in evidence for your consideration when you deliberate this case.

However, I direct the court reporter to strike from the record of this trial so much of that testimony that included the phrase attributed to Sean Allen that begins "shortly before leaving for the East Side Club." That is no longer evidence in this trial. You are to disregard it.

Thus, in response to the government's failure to disclose the entirety of appellant's oral statement, the trial judge, in the exercise of his discretion, sanctioned the government by striking the reference to the East Side Club. According to appellant, this sanction was inadequate.

■ It is well established in this jurisdiction that the trial court has authority, pursuant to Rule 16(d)(2), to fashion an appropriate sanction for failure to comply with Rule 16(a)(1)(A). *Williams v. United States,* 641 A.2d 479, 484 (D.C.1994); *Davis v. United States,* 623 A.2d 601, 605 (D.C.1993); *see also*

*Cotton v. United States,* 388 A.2d 865, 869 (D.C.1978).

[T]he [c]ourt may order [the] party [who has violated Rule 16] to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other orders as it deems just under the circumstances.

Super.Ct.Crim.R. 16(d)(2). The trial judge enjoys a broad range of possible sanctions, with the sole limitation being that the sanction be "just under the circumstances." *Davis, supra,* 623 A.2d at 605.

■ In exercising its discretion, the trial court must consider the reason for the nondisclosure, the impact of nondisclosure, and the impact of the proposed sanction on the administration of justice. *Yoon v. United States,* 594 A.2d 1056, 1061 (D.C.1991) (quoting *Wiggins v. United States,* 521 A.2d 1146, 1148 (D.C.1987)). The record does not reflect any specific reason for the nondisclosure of the complete statement to appellant prior to September 9th; however, this court has recognized that, despite the disclosure requirements of Rule 16, "less precision is possible with statements which have not been reduced to writing." *Thomas v. United States,* 444 A.2d 952 (D.C.1982). Though the disclosure of appellant's oral statement during the preliminary hearing that he was going to the "east side" that evening, instead of to the "East Side Club," may not have been sufficient, we concur with the trial court that the government did not act in bad faith. There is no indication from the record that the government purposely failed to disclose the full statement in order to thwart appellant's defense or surprise appellant at trial. Moreover, the trial judge imposed a sanction against the government and excluded from the jury's consideration the apparent inadvertent reference to the East Side Club, and thus, prevented appellant from being prejudiced by the government's actions.

In reviewing a trial judge's exercise of discretion, an appellate court must defer to the judge's choice if it was within the range of permissible alternatives, taking "cognizance of the nature of the determi-

nation being made and the context within which it was rendered."

*Wiggins, supra,* 521 A.2d at 1148 (quoting *Johnson v. United States,* 398 A.2d 354, 366 (D.C.1979)). This court will not reverse the trial court's decision as to what sanctions, if any, to impose for the government's failure to disclose fully statements pursuant to Super.Ct.Crim.R. 16, unless there is an error which has *substantially prejudiced* a defendant's rights. *Lee v. United States,* 454 A.2d 770, 776 (D.C.1982) (emphasis added), *cert. denied,* 464 U.S. 972, 104 S.Ct. 409, 78 L.Ed.2d 349 (1983).

Here, appellant's rights were not substantially prejudiced. The trial judge imposed a sanction against the government by excluding from the jury's consideration appellant's statement that he was going to the East Side Club. Appellant has not articulated what prejudice, if any, he has suffered by this sanction. Appellant has not demonstrated from the record that the defense strategy was adversely affected or that he was prevented from pursuing his theory of the case. Furthermore, appellant's own witness, Anita Barbie, testified that appellant told her he was going to the East Side Club the night he was arrested. Finding no abuse of discretion by the trial judge in the fashioning of the sanction and no substantial prejudice to appellant by the sanction imposed, we find no basis for reversal of the trial court's denial of the request for a mistrial.

### III.

■ Appellant also argues that the government improperly failed to preserve the automobile key for the vehicle involved and the yellow tag to which it was attached, and therefore, the trial court should have imposed sanctions against the government. At trial, appellant also alleged that, contrary to the government's representations, the key to the automobile was one of a number of keys on a key ring which had on it a photograph of the juvenile passenger riding with appellant in the car on the night of the arrest.

Super.Ct.Crim.R. 16(a)(1)(C) provides, in relevant part, that:

[u]pon request of the defendant the prosecutor shall permit the defendant to inspect and copy or photograph ... tangible objects ... or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant.

Appellant argues that the key and yellow tag were material to his defense and should have been preserved and made available to him during pretrial discovery.

■ The duty to produce discoverable evidence entails the antecedent duty to preserve that evidence. *Brown v. United States,* 372 A.2d 557, 560 (D.C.) (citing *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969)), *cert. denied,* 434 U.S. 921, 98 S.Ct. 397, 54 L.Ed.2d 278 (1977). In determining whether the government's failure to preserve the evidence was error, this court should consider "(1) the circumstances occasioning the loss; (2) systematic steps taken toward preservation; and (3) the magnitude of demonstrated evidentiary materiality." *Brown, supra,* 372 A.2d at 561.

Here, it is undisputed that appellant used a key to operate the vehicle. The key and yellow tag were placed in the property room, in accordance with normal police procedure, when the vehicle was "put on the property book." A representative from the automobile dealership came to the First District police station shortly after being notified that the car had been recovered, and the key and the car were released to him. The key and yellow tag were not preserved by the government because they were returned to the owner of the car, and the car, with the key, was subsequently sold approximately three days after being returned to the dealership. There is no indication from the record that the government acted in bad faith in returning the key and yellow tag to the owner.

Moreover, the trial judge specifically questioned the materiality of the key, the yellow

tag, and the alleged key ring and photo.[5] Appellant correctly argues that the central issue is whether he had guilty knowledge that the Acura was stolen, but he fails to demonstrate how the key and yellow tag were material to his defense of lack of knowledge. Given the fact that appellant stated that he received the Acura from a "crack head" for five dollars, we find that preservation of the key to the Acura Legend and the yellow tag would not have led a reasonable juror to conclude that appellant had no knowledge that the Acura was not stolen property. See note 5, *supra*. Moreover, the trial judge found that appellant was not prejudiced because he could cross-examine the seller of the car, the arresting officer, and any other officer associated with the processing of the car about the key and the yellow inventory tag, thus rendering unnecessary the actual production of the key and yellow tag. The record supports the trial court's ruling that sanctions were unwarranted, and therefore, the trial court's failure to impose sanctions does not constitute an abuse of discretion. *See Marshall v. United States,* 340 A.2d 805, 809–10 (D.C.1975).

### IV.

■ Appellant next contends that he was unfairly prejudiced by the prosecutor's references to the East Side Club in his opening statement and closing argument. He argues that the prosecutor's comments were improper, inflammatory, and unsupported by any evidence, and that only a mistrial would have removed the prejudice to appellant. In his opening statement, the prosecutor stated that "the evidence will show that this club is an extraordinarily dangerous club" and that

the police patrol this vicinity in particular, and in fact were parked and patrolling the vicinity that night because there had been shootings there. There was drug abuse there.... The people who frequent the club are usually young, and there are problems. Let it be said at that. The officers will explain more when they testify.

Counsel for appellant objected to the references to the club, but those objections were overruled.

In closing argument, the prosecutor continued to discuss the reputation of the East Side Club in order to suggest that appellant knew that there was a gun in the car underneath his seat. The prosecutor argued:

Now, you heard the testimony of Sergeant Gary Glenn concerning what the East Side Club was. He told you that it was a club which was extremely dangerous.

He told you that the club is notorious for gun fights, guns being present, and other problems. That is where [appellant] was going on the night in question with his friend, and that's where they were headed when they went into the intersection.

After discussing the various factors suggesting that appellant knew about the gun, the prosecutor focused on the implausibility of a seventeen year old having both a gun in his pants and under the driver's seat. He continued:

[W]hat is the plausibility of this juvenile, D.W., having in his waistband his own .25–caliber small pistol and then having underneath the driver's seat another pistol so that, when they go into the East Side Club, what? He can be like some soldier of fortune, a mastermind, and shoot up this place?

---

5. Appellant argued throughout trial that in addition to the key in the ignition of the car, there were a number of keys on a key ring which had a picture of appellant's juvenile companion, D.W., on it. The government consistently denied the existence of any such key ring. The trial judge, in an effort to find any evidence which would corroborate appellant's assertion of the existence of this key ring, contacted the juvenile's attorney and the assistant corporation counsel assigned to that case, and spoke with them *in camera* regarding the key ring. He also issued subpoenas for relevant police department records. Finding no evidence corroborating appellant's assertion that

the key ring and photo existed, the trial judge concluded that sanctions for the failure to preserve the key ring and photo had no basis, and, therefore, the request for sanctions was denied.

Moreover, the trial judge questioned whether by

showing that there was a key ring attached to the key in the ignition, a reasonable juror could conclude, therefrom that [appellant] had no knowledge or no reason to believe that this brand new Acura Legend was not stolen property particularly in light of [appellant's own] statement that the car had been received from some female crack head.

At that point, counsel for appellant objected, and the trial judge sustained the objection.

On appeal, appellant argues that the prosecutor should not have been permitted to introduce evidence as to the character of the East Side Club and to argue that the character was relevant to the question of whether appellant possessed the weapon underneath the driver's seat. Appellant argues that these particular comments regarding the club had so poisoned the minds of the jury, that only a mistrial would have removed the prejudice to appellant. In evaluating a mistrial motion for alleged prosecutorial impropriety, this court considers the following factors:

> (1) the gravity of the misconduct, (2) the relative strength of the government's evidence, (3) the centrality of the issue affected (its direct relationship to the issue of guilt or innocence), and (4) the mitigating efforts that were made.

*Parks v. United States*, 451 A.2d 591, 611–12 (D.C.1982) (internal quotation marks omitted) (quoting *Johnson v. United States*, 386 A.2d 710, 713 (D.C.1978) (citations omitted), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983)). "In addition [to these factors], the opinion of the trial judge is entitled to some reliance since only [s]he had the opportunity to appraise the effect of the remarks in their setting." *Parks, supra*, 451 A.2d at 612 (internal quotation marks omitted) (quoting *Jenkins v. United States*, 374 A.2d 581, 585 (D.C.) (citation omitted), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977)). Even if we conclude that the prosecutor's comments were improper, this court will, nonetheless, affirm appellant's conviction unless the defendant suffered substantial prejudice as a result of the comment.[6]

The prosecutor's statements regarding the East Side Club and the problems associated with it did not constitute grave misconduct, and appellant was not substantially prejudiced, in any event, by the prosecutor's statements regarding the club. *Cf. Dyson v. United States*, 418 A.2d 127, 130–31 (D.C. 1980) (conviction reversed after repeated statements that all defense witnesses lied, suggestion that defendant fabricated his testimony based on that of other witnesses, and unauthorized argument regarding missing alibi witnesses); *Villacres v. United States*, 357 A.2d 423, 428 (D.C.1976) (conviction reversed after repeated misstatements of the evidence—including comments on inadmissible confession, unfounded allegation that defendant had instructed mother to suppress evidence, and argument that crime was comparable to crucifixion of Christ). The statements made by the prosecutor were supported by the evidence adduced at trial. Officer Gary Glenn, who patrols the area surrounding the East Side Club, testified as to the conditions and atmosphere at the club. Thus, the government did not misstate the evidence, introduce unfounded allegations, suggest that appellant's witnesses had lied, or commit any comparable action.

The harm, if any, caused by the prosecutor's statement in closing argument was mitigated by the trial court's sustaining of appellant's objection. Though appellant claims that no curative instruction was given, appellant did not request one, and the trial court's failure to give one *sua sponte* was certainly not plain error.[7] Moreover, any

---

6. The test for determining substantial prejudice is well settled:

> whether we can say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error. The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.

*McGrier v. United States*, 597 A.2d 36, 41 (D.C. 1991) (quoting *Gaither v. United States*, 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969) (citation and internal quotation marks omitted)).

7. Though a curative instruction was not given after appellant's objection was sustained, in its preliminary instructions, the court told the jury:

> When an objection is raised, it's the Court's duty to rule on the objection. And if the Court sustains the objection, then the jury should not speculate as to how the question might have been answered. And, indeed, you should disregard the question.

This court will reverse for plain error only if the error was "so prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc); *see also Cowan v. United States*, 629 A.2d 496, 502 (D.C.1993)

error by the trial court was harmless, given the strength of the government's case against appellant. The gun was located beneath the seat in which appellant sat. Two police officers testified that after appellant and the juvenile, D.W., had been pulled over and had exited the vehicle, they both observed the stock of a handgun protruding from underneath the driver's seat where appellant had been sitting and driving the vehicle. In light of the strength of the government's evidence and the lack of evidence demonstrating that appellant has suffered substantial prejudice as a result of the prosecutor's comments regarding the East Side Club, we find no error in the trial court's failure to grant a mistrial for appellant.[8]

## V.

■ Appellant's final contention is that the trial court's *ex parte* communication with the jury in answering their note was reversible error. On the second day of deliberations, the trial judge answered a jury note before appellant's counsel arrived in the courtroom. The trial judge stated to the appellant:

> Mr. Allen, you don't have to come down front. I'm having the case called to read into the record that I got this note from the jury at five minutes to ten. "Number one, we need a list of the specific elements of the crime of receipt of stolen property. Number two, memo of DA concerning statement." It's signed by Juror Number 106.

> In response to this note, I'm sending the following note to the jury. "Good morning jurors.... Please see the attached memo listing the statutory elements of the offense of receiving stolen property.... Two, the DA's memo, which you have requested, is not in evidence itself, because the document is inadmissible hearsay.

> The testimony concerning it, however, is a part of the evidence.

> Thank you. Judge Rankin."

> All right, take this to the jury. Let the record also reflect that we immediately called for attorneys Shacklee and Goemann upon receipt of this memo. It's been 25 minutes, and I see no reason to wait any longer to send the jury this response.

Appellant argues that his counsel should have been consulted by the trial court before the note went back to the jurors and that a more appropriate response to the note would have simply been that "the document is not in evidence."

■ "[A]ny discussion with the trial judge relating to the trial should be conducted only in the presence of all counsel." *Johnson v. United States,* 544 A.2d 270, 273 (D.C.1988) (internal quotation marks omitted) (quoting *Clifton v. United States,* 363 A.2d 299, 301 (D.C.1976)). While some *ex parte* communications between judge and jury regarding non-substantive matters may be harmless, this court has held that *ex parte* communication between judge and jury "raises a strong inference of reversible error." *Etheredge v. District of Columbia,* 635 A.2d 908, 924 (D.C.1993). The communication at issue here is subject to harmless error analysis, and "the party seeking affirmance must demonstrate that the error was harmless." *Id.*

Here, the judge should have waited for counsel for appellant to return before sending the response back to the jury, but we hold that the error was, nonetheless, harmless beyond a reasonable doubt. *Winestock v. United States,* 429 A.2d 519, 529 (D.C. 1981). Unlike *Etheredge,* the judge's *ex parte* communication with the jury was on the record, and thus we are able to review the statements of the trial court to the jury. The trial judge was correct in stating that

---

(plain error contemplates a clear showing of a miscarriage of justice). Given that the trial judge sustained appellant's objection and that appellant did not request a curative instruction, we find no error requiring reversal on this issue.

**8.** The record indicates, however, that appellant made no motion for a mistrial at trial, but rather argued for the first time on appeal that a mistrial

should have been granted *sua sponte* by the trial judge. Absent such a request, appellant must show plain error in the trial court's failure to *sua sponte* declare a mistrial. "Under the 'plain error' standard, we may disturb the judgment below only to avoid a miscarriage of justice." *Redman v. United States,* 616 A.2d 336, 338 (D.C. 1992). We find no miscarriage of justice here.

the case memo was not in evidence. Moreover, the testimony concerning the memo to which the trial judge alluded simply consisted of Officer Gingrich testifying that he recalled that the papering assistant included appellant's statement in his papering notes. We are satisfied that there was no prejudice here.

Accordingly, the judgments on appeal are hereby

*Affirmed.*