**Jose A. RAMIREZ, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 11–CF–680.

District of Columbia Court of Appeals.

Submitted June 21, 2012.

Decided Aug. 16, 2012.

John L. Machado was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, James A. Petkun, Mary B. McCord, and Lauren R. Bates, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and NEBEKER, Senior Judge.

WASHINGTON, Chief Judge:

Appellant Jose Ramirez was charged with possession with intent to distribute cocaine (PWID) and possession of drug paraphernalia.[1] Following a jury trial, he was acquitted of PWID, but convicted of the lesser-included offense of possession of cocaine.[2] He was also convicted of possession of drug paraphernalia. On appeal, Mr. Ramirez claims that: (1) the evidence was insufficient to support his convictions;

---

1. D.C.Code §§ 48–904.01(a)(1), –1103(a) (2001).

2. D.C.Code § 48–904.01(d)(1) (2001).

and (2) the trial court erred by instructing the jury that it could find him guilty of possession of drug paraphernalia based on possession of one ziplock bag. For the reasons stated below, we disagree and affirm.

## I.

The government presented the following evidence at trial. On April 23, 2010, Metropolitan Police Department officers executed a search warrant at 1445 Otis Street, N.W., Apartment 301. The police conducted a "knock and announce" and, after waiting and receiving no response, entered the apartment by force. Inside the apartment, the police found two men: Pascual Luna, who was seated at the dining room table in the kitchen; and Mr. Ramirez, who was walking out of the kitchen. Mr. Ramirez told police that he lived in the apartment. When asked where in the apartment he resided, he pointed to the bed in the living room.

Police found drugs and drug paraphernalia throughout the apartment. In the kitchen, police found, inter alia, 43 ziplock bags containing a white powdery substance and assorted drug paraphernalia, including digital scales. Inside the kitchen sink was a plate with white powder residue. The kitchen sink's faucet was running, the plate was wet, and there was a large quantity of a white powdery substance underneath the plate.

In a closet directly next to the bed in the living room where Mr. Ramirez resided, police found a ziplock bag containing a white powdery substance in the pocket of a pair of jeans, a backpack which contained a digital scale, a jacket with $1,250 in one of its pockets, mail matter bearing Mr. Ramirez's name, and two photos of Mr. Ramirez. In the back bedroom where Mr. Luna resided, police recovered additional drugs and drug paraphernalia. Police searched Mr. Ramirez and Mr. Luna and found $102 on Mr. Ramirez, and ziplock bags containing a white powdery substance and $520 on Mr. Luna.

An expert in the distribution and use of narcotics in the District of Columbia testified that powdered cocaine is usually packaged in small ziplock bags and that digital scales are used to measure cocaine and to cut up small portions of pure cocaine before adding cutting agents. The parties stipulated that, if called to testify, a Drug Enforcement Agency chemist would have testified that the white powdery substance was cocaine. Specifically, the chemist would have testified that the ziplock bag found in Mr. Ramirez's closet contained 0.11 grams of cocaine, and that the ziplock bags found on the kitchen table contained 27.2 grams of cocaine.

At the close of the government's case, Mr. Ramirez moved for judgment of acquittal, claiming that the government had not sufficiently proven any of the charges. The trial court denied Mr. Ramirez's motion.

The defense presented testimony from one witness, Eliberto Romero, who also lived in the apartment at the time the search warrant was executed. Mr. Romero testified that Mr. Ramirez had been living in the apartment for approximately three months prior to the incident and was unemployed during such time. Mr. Romero explained that Mr. Ramirez slept in the bed in the living room and that Mr. Ramirez only used and stored his personal belongings in the closet closest to his bed while Mr. Luna used the second closet in the living room. However, according to Mr. Romero, the backpack found in Mr. Ramirez's closet belonged to Mr. Luna.

The jury acquitted Mr. Ramirez of PWID, but convicted him of possession of cocaine and possession of drug paraphernalia. This appeal followed.

## II.

■ Mr. Ramirez claims the evidence was insufficient to show that he possessed drugs or drug paraphernalia. We review sufficiency claims "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Gibson v. United States*, 792 A.2d 1059, 1065 (D.C.2002) (quoting *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987)).[3]

To prove possession of drug paraphernalia, the government must show that the defendant used or possessed paraphernalia to "... pack, repack, store, contain, conceal ... or otherwise introduce into the human body a controlled substance." D.C.Code § 48–1103(a) (2001). Drug paraphernalia includes: "*[S]cales* ... intended for use, or designed for use in weighing or measuring a controlled substance [and] ... *[z]ip-lock bags* ... intended for use, or designed for use in packaging small quantities of a controlled substance...." *Fatumabahirtu v. United States*, 26 A.3d 322, 331 (D.C.2011) (emphasis added) (quoting D.C.Code § 48–1101(3)(E), (I) (2001)).

■ Possession of drugs, drug paraphernalia, or other contraband can be proven by showing either actual or constructive possession. *Smith v. United States*, 809 A.2d 1216, 1221 (D.C.2002). To prove constructive possession, the government must show "that the defendant (1) knew of the presence of the contraband, (2) had the power to exercise dominion and control over it, and (3) intended to exercise dominion and control over it." *In re T.H.*, 898 A.2d 908, 911 n. 2 (D.C.2006) (quoting *Blackmon v. United States*, 835 A.2d 1070 (D.C.2003)). "Constructive possession

may be sole or joint and may be proven by direct or circumstantial evidence." *Rivas v. United States*, 783 A.2d 125, 129 (D.C. 2001) (en banc) (internal citation omitted).

■ Constructive possession requires more than mere presence of the accused on the premises, or simply his proximity to the drugs. *Id.* at 130. There must be "something more in the totality of the circumstances that ... establishes that the accused meant to exercise dominion or control over the narcotics." *Id.* In general, however, "a jury is entitled to infer that a person exercises constructive possession over items found in his home." *Moore v. United States*, 927 A.2d 1040, 1050 (D.C. 2007) (internal quotation marks omitted). "Evidence suggesting that a defendant has regular access to the premises, such as possession of a key, may also be sufficient to establish constructive possession." *Id.* "The inference that a person who occupies an apartment has dominion and control over its contents applies even when that person shares the premises with others, although it is plainly not as strong an inference in that circumstance." *Id.* (internal quotation marks omitted).

In *Moore*, police executed a search warrant at an apartment in Northeast and found, *inter alia*, a handgun and several bags of cocaine. 927 A.2d at 1047–48. Appellants were convicted of several weapons and drug offenses, and on appeal, one of the appellants challenged the sufficiency of the evidence to support his possession convictions. *Id.* at 1049–50. We affirmed, pointing out that: though the appellant was not present inside the apartment when the contraband was discovered, he was in the immediate vicinity; he had a key to

---

**3.** Mr. Ramirez's failure to renew his motion for a judgment of acquittal at the close of the entire case does not foreclose review of the sufficiency of the evidence, but rather "requires that the scope of review be expanded

to include *all* of the evidence." *Sutton v. United States*, 988 A.2d 478, 482 (D.C.2010) (quoting *Wheeler v. United States*, 494 A.2d 170, 171–72 (D.C.1985)).

the apartment and admitted living there; he had been photographed there; his wife was the lessee; and the handgun and drugs recovered from the apartment were found in the unit's only bedroom, lying in plain view next to his personal papers. *Id.* at 1050–51.

*Davis v. United States,* 623 A.2d 601 (D.C.1993), involved a similar scenario. There, police executed a search warrant at a home in Northeast. *Id.* at 602. There, police found packages of heroin and cocaine in a denim jacket in one of the bedrooms. *Id.* The defendant was convicted of PWID and challenged the sufficiency of the evidence on appeal. *Id.* We affirmed, characterizing defendant's challenge as "frivolous" in light of the evidence that: the defendant lived in the bedroom where police found the drugs; the defendant was the likely owner of the denim jacket; the defendant's personal papers were found in the bedroom along with the drugs; the defendant was present at the time of the search; and the defendant attempted to conceal her identity from the police. *Id.* at 603–04.

▮▮ This case falls neatly within the foregoing precedents, and therefore we conclude that the evidence was sufficient to show that Mr. Ramirez constructively possessed drugs and drug paraphernalia. When police ultimately forced their way into the apartment (after knocking and receiving no response), Mr. Ramirez was in the kitchen, along with 27.2 grams of cocaine and digital scales. The sink's faucet was running in what may have been an attempt to dispose of the drugs. Mr. Ramirez acknowledged that he resided in the apartment where the search warrant was executed and, when asked where in the apartment he resided, he pointed to the bed in the living room. Near the bed in the living room, in a closet, police recovered mail addressed to Mr. Ramirez, photos of Mr. Ramirez, and, inside a pair of pants, a ziplock bag of cocaine. Based on the foregoing, we are satisfied that the government met its obligation to show "something more in the totality of the circumstances" than Mr. Ramirez's mere presence, *Rivas,* 783 A.2d at 130, and we are satisfied that a reasonable juror could infer that Mr. Ramirez intended to exercise dominion and control over the drugs and drug paraphernalia found in his apartment.

## III.

▮▮ Mr. Ramirez also claims that the trial court erred in allowing the jury to conclude that one ziplock bag could provide a sufficient basis for possession of drug paraphernalia. By way of background, count two of the indictment in this case charged Mr. Ramirez with "possession [of] drug paraphernalia, that is, ziplock bags," *i.e.,* more than one ziplock bag. Likewise, the trial court's jury instructions referenced "ziplock bags." During deliberations, the jury sent a note which asked whether "possession of a single ziplock bag containing cocaine" would suffice to sustain the drug paraphernalia charge. The trial court discussed the matter with counsel and ultimately ruled that, as a matter of law, "if you have one [ziplock] bag on you . . . that would be possession of drug paraphernalia." Defense counsel responded, "Your honor, on the letter of the law, I can't disagree with it." Defense counsel asked, however, that he be given the chance to present a contrary position if he found case law supporting such a position. The trial court proposed responding to the jury that, "yes, possession of a single ziplock bag may be sufficient if the other elements are met." Before responding to the jury, the trial court asked defense counsel if he had any objection, and defense counsel responded, "No."

Mr. Ramirez's claim fails to the extent he maintains the trial court's response to the jury was an incorrect statement of law. Assuming that Mr. Ramirez's claim is not waived, as the government suggests, it is subject to review for plain error because Mr. Ramirez failed to object to the trial court's proposed response. *See, e.g., Bean v. United States,* 17 A.3d 635, 637 (D.C. 2011). Mr. Ramirez has not offered any basis for concluding that the trial court's response was incorrect, and in fact, he concedes that "the court's analysis of the charge of possession of drug paraphernalia was correct."

Taking a different tack, Mr. Ramirez argues that in responding to the jury note, the trial court "lowered the bar" of the indictment, which we construe to suggest that the trial court constructively amended the indictment. Mr. Ramirez contends that possession of drug paraphernalia based on a single ziplock bag (in his closet) was "never part of the government's theory of the case." In support of this contention, he highlights a portion of the government's opening statement.[4]

■ Under the Fifth Amendment to the United States Constitution, "[n]o person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." "[A]fter an indictment has been returned[,] its charges may not be broadened through amendment except by the grand jury itself." *Woodall v. United States,* 684 A.2d 1258, 1263 (D.C.1996) (quoting *Stirone v. United States,* 361 U.S. 212, 215–16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (quotation marks omitted)). Thus, in *Wooley v. United States,* 697 A.2d 777, 779–85

(D.C.1997), for instance, where the indictment charged defendant with possession of heroin, the trial court committed reversible error when it permitted the government to proceed under the indictment "with the understanding that what is charged is cocaine, not heroin." The trial court committed reversible error because there was a substantial likelihood that the defendant "may have been convicted of a crime different from that charged by the grand jury." *Id.* at 785 (citation omitted).

In this case, there is no reasonable likelihood that the defendant was convicted of a crime different from that charged by the grand jury. Nothing in the plain language of the indictment—or any other aspect of the record, including the government's opening statement—lends support to the notion that the grand jury charged Mr. Ramirez with possession of certain ziplock bags in his apartment to the exclusion of others. We are satisfied, therefore, that the trial court did not broaden the charges in the indictment.

Accordingly, the judgment of the trial court is

*Affirmed.*

:

4. Mr. Ramirez focuses on the following portion of the government's opening statement: Officers found a large amount of cocaine inside the apartment and found other items, such as scales and an empty [ziplock] that can be used in the packaging and distribution of cocaine.... And officers immediately saw that the table was covered with [ziplocks] that the evidence will show contained cocaine, a white powdery substance, with digital scale, with empty [ziplocks].